THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, PLAINTIFF IN ERROR, v. CAROLINE REICH, DEFENDANT IN ERROR.

| 61 | 635 |
|----|-----|
| f63 | 278 |
| o63 | 281 |

| 61 | 635 |
|----|-----|
| 65 | 104 |

| 61 | 635 |
|----|-----|
| 67 | 274 |

| 61 | 635 |
|----|-----|
| 68 | 30 |
| 68 | 31 |

1. The plaintiff, a young child, was injured while upon a turntable of the defendant company. The turntable was located upon the private property of the defendant, near to a public street, and was entirely unprotected and unguarded. Children of all ages frequently congregated upon the defendant's premises to play upon the turntable. *Held,* that there was no liability on the part of the railroad company to answer for the plaintiff's injury.

2. A landowner is ordinarily under no obligation to a mere licensee or to a trespasser to keep his premises in a safe condition, and the fact that the licensee or the trespasser is an infant of tender years affords no reason for modifying this rule, and charging the landowner with a duty which does not otherwise exist.

3. When an owner of lands erects upon his premises, for their more beneficial user, a structure which happens to be attractive to children, he does not, by such action, extend an invitation to children to enter thereon.

[*Argued March 24th*, 1898 ; *decided June 20th*, 1898.]

On error to the Essex Circuit.

The defendant in error (who was the plaintiff below), on the 15th day of June, 1896, then being thirteen years of age, had her foot crushed while in the act of rescuing her brother, a child six years of age, who was playing on a turntable of the defendant company. It appeared in the case that the brother of the plaintiff, in company with several other little children, went to the company's turntable to play, and that she, deeming her brother to be in peril, went to the turntable, while the same was motionless, for the purpose of taking her brother off, and that, while she was in the act of stepping with him from the turntable, it was turned by one of the other children, and her foot was thereby caught and crushed so badly that it had to be amputated. It further appeared that the turntable was located in an open field on the land of the company, within ninety feet of a public street, and was entirely unguarded and unprotected. It also appeared that a path led across this field, passing the turntable within a few feet, and this path was used by the public without any hindrance or objection on the part of the railroad company. It also appeared that the turntable was frequented by children of all ages, who congregated there for the purpose of playing upon it. The case was left to the jury, on the theory that if the turntable was a structure of a character to tempt children to meddle with it, and dangerous to them if they yielded to the temptation, the railroad company was chargeable with the duty of using reasonable care to protect them from harm, the negligent performance of which would render the company liable for injuries received.

There was a verdict for the plaintiff.

For the plaintiff in error, *Depue & Parker.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

GUMMERE, J. This case was tried below, and has been argued here by counsel on both sides, on the theory that the legal position of the parties, so far as their respective rights and duties are concerned, is the same as if the plaintiff had been injured while herself playing upon the defendant company's turntable, in ignorance of the danger to which she was subjecting herself, and that such ignorance was due to the fact that she was not of an age to understand or appreciate the peril. For the purpose of disposing of the case, therefore, it will be assumed that this is the true situation of the parties, although it may well be considered that the plaintiff, in doing what she did, took upon herself all the risk of danger which was incident to her undertaking.

The underlying question, upon the solution of which our decision must rest, is whether the owner of land who constructs or places upon it anything which, though necessary for its proper enjoyment, happens to be of a character which is attractive to children and at the same time dangerous to them if they yield to the attraction, thereby becomes chargeable with the duty of using reasonable care to keep them off his premises or to protect them if they enter, for it must be admitted that, unless such user creates a duty on the part of the landowner to protect the child who comes upon his premises, the neglect of which produces injury to the child, no liability rests upon him for such injury. If there is no duty in the case there can be no negligence; there cannot be such a thing as the negligent performance of a non-existent duty.

It is universally acknowledged that no such duty rests upon the owner of lands with regard to adults, but in many of the decided cases a distinction is made between trespassers of mature years and children, and it is held that as to the latter the duty of protection exists. Most of the cases in

which this doctrine has been enunciated have arisen on facts similar to those presented by the case now before us—that is, in cases where children have been injured while playing upon turntables located upon the private property of railroad companies. *Railroad Company* v. *Stout*, 84 *U. S.* 657, is the first of this line of cases. *Keffe* v. *Milwaukee and St. Paul Railway Co.*, 21 *Minn.* 207; *Koons* v. *St. Louis, &c., Railroad Co.*, 65 *Mo.* 592; *Kansas Central Railway Co.* v. *Fitzsimmons*, 22 *Kan.* 686; *Ferguson* v. *Columbus, &c., Railway*, 75 *Ga.* 637, and *Barrett* v. *Southern Pacific Co.*, 91 *Cal.* 296, also support this doctrine and are, all of them, so-called " turntable cases."

It is apparent, however, that if the duty exists in the case of a railroad company having a dangerous attraction upon its land, it exists equally in the case of a private landowner who, for the purpose of carrying on his business properly, maintains upon his premises an attraction of a character dangerous to children, and in fact, numerous cases may be found in the books where " dangerous attractions " other than turntables, placed upon the premises of the individual owner for their more complete beneficial user, have been held to charge him with the duty of protecting children who are allured thereby. *Siddall* v. *Jansen*, 168 *Ill.* 43; *Birge* v. *Gardiner*, 19 *Conn.* 507; *Whirley* v. *Whiteman*, 1 *Head* 610; *Powers* v. *Harlow*, 53 *Mich.* 507, and *Bransom's Administrator* v. *Labrot*, 81 *Ky.* 638, are cases of this character.

But, although this doctrine has received the support of many courts of high distinction, it has been absolutely repudiated by other courts whose decisions rank equally high. The cases of *Frost* v. *Eastern Railroad*, 64 *N. H.* 220; *Daniels* v. *New York, &c., Railroad*, 154 *Mass.* 349, and *Walsh* v. *Fitchburg Railroad Co.*, 145 *N. Y.* 301, all declare that no distinction exists between adults and infants when entering uninvited upon lands of another, with relation to the duty which the owner or occupier of such lands owes to them.

The same view is expressed by the Supreme Court of this state, in the case of *Turess* v. *New York, Susquehanna and*

*Western Railroad Co.*, in an opinion by Chief Justice Magie, *ante p.* 314, in which the whole subject is carefully and exhaustively considered. This court, however, has, up to the present time, never been called upon to decide the question, and we are free to adopt either the view taken by the United States Supreme Court, in *Railroad Company* v. *Stout, supra,* and the cases which have followed it, or that taken by the courts of Massachusetts, New Hampshire and New York, as well as by our Supreme Court, according as the one or the other shall the more commend itself to us.

It must be conceded, I think, that the rule which imposes liability upon the landowner is a hard one, so far as he is concerned, in this respect, that no matter how carefully he may endeavor to protect himself by discharging the duty which the law places upon him, the probability of his failure is great. When contemplating the alteration of his land from the condition in which nature left it, for the purpose of obtaining a more beneficial user therefrom, he must first consider whether the alteration will render it *attractive* to children of tender years, and, if so, whether they will be subjected to danger if they succumb to the attraction. If he honestly concludes that the change will not operate to attract children, and that, therefore, although it may make his property dangerous, he is under no obligation to provide for their safety, or if he concludes that, although the alteration may render his property attractive to children, they will not incur danger by coming upon it, and, for either of these reasons, fails to take precautions for their safety, it will be for the jury to say whether he must answer for the result if injury to a child follows upon his omission; and their verdict will depend upon whether, in their opinion, he had reasonable ground for his conclusion. So, too, if he appreciates that the change which he proposes to make will render his premises dangerously attractive to children, and takes precautions to exclude them therefrom, it is still possible that they may elude his vigilance and receive hurt while trespassing, and when that occurs it at once becomes a question for the jury to say whether

or not the injury was the result of the want of due care on the part of the landowner in affording that protection which his duty required. What the conclusion of the jury would be in any given case, of course no one can tell. The fact, however, is suggestive that, in every reported case, so far as I have examined them (and I have examined many), where this doctrine has been under consideration, it has always been the landowner, and never the injured child, who was trying to avoid the result of the verdict of the jury. It is only in those cases where the action of the jury has been controlled by the trial court that the injured child has sought a review.

The probability that the landowner will not be able to avoid liability for injuries to children who come upon his lands without invitation, no matter how careful he may have been, while it affords no reason for denying the existence of the rule which holds him to responsibility, certainly requires that we should not accept it as sound, unless it rests upon a solid foundation.

Some of the cases above cited, in which the liability of the landowner has been sustained, *assume* that the duty of protection rests upon him merely by reason of the inability of the child to care for its own safety, and discuss only the question whether the alleged duty has been negligently performed. Other of the cases consider the question of the existence of the duty, and sustain it on the ground that the landowner who places upon his land anything which is attractive to children, and, at the same time, dangerous to them if they yield to the attraction, is presumed to know that they are likely to be overcome by the temptation presented to them, and that, therefore, he is to be considered as having "allured" or impliedly invited them to come upon his premises and submit themselves to the dangers there encountered.

The suggestion contained in the line of cases first adverted to, viz., that the duty of protection is cast upon the landowner solely by reason of the inability of the child to care for its own safety, seems to me to be unsound in principle. Primarily, the duty of affording protection to the child rests

upon the parent, who is responsible for its being. If the parent neglects the duty which the law casts upon him and permits his child to stray upon the land of another and there incur peril, why should the duty of protection be shifted from the negligent parent to the owner of the land? It is usually the fact, in cases of this kind, that the landowner has no knowledge that children have come upon his premises and are exposed to the danger there until after injury has actually occurred, while other persons who are passing by frequently observe the risk that is being run by childish intruders, but take no steps to bring it to an end. If the duty of protection, under such circumstances, is to be shifted from the parent to a third person, it would seem more consonant with reason to place it upon those who have knowledge of the existence of the danger and opportunity to terminate it, rather than upon the landowner, who is entirely ignorant of the entry of the children upon his premises. The mere fact that a child is unable to guard itself against peril and that its parent fails to provide for its safety does not, *ipso facto*, cast upon any third person the duty of affording it protection.

Nor am I able to appreciate the force of the reasoning upon which the conclusion is based that a landowner who puts upon his premises a structure which is attractive and also dangerous to children is to be regarded as having, by implication, invited them to enter or as having "allured" them into danger, and is, therefore, to be held to the same measure of responsibility as if he had *expressly* invited them to come upon his lands.

No one, I presume, will contend that a landowner who, in the beneficial user of his premises, places thereon something which attracts children into danger really puts it there with the intention of extending an invitation to them or of luring them into jeopardy. On the contrary, it will be admitted that the entry is ordinarily against the desire of the landowner, and that if his permission was asked it would be refused. But the argument is that the intent, although it does not exist *in fact*, nevertheless exists *in law*, because

every man is presumed to intend the natural consequences of
his acts. The fallacy of this argument is clearly shown in
an interesting and instructive article on the liability of land-
owners to children entering without permission, by Hon.
Jeremiah Smith, a former Justice of the Supreme Court of
New Hampshire, published in the Harvard *Law Review* in
February and March, 1898. The author says: "The so-
called presumption that every man intends the probable con-
sequences of his acts is not a rule of law further or otherwise
than as it is a rule of common sense. In other words, the
'presumption' is, at most, only a *prima facie* presumption,
and may be strong, weak or utterly inefficacious, according to
the varying situations where the attempt is made to apply it.
If the result in question is one which men are frequently
prone to desire, and there is no assignable reason for the act
except the single one of accomplishing that particular result,
the inference that the result was intended is strong. If, on
the other hand, the result is one which not one man in ten
thousand desires, and there is another assignable reason for
the act, and one, moreover, by which men are generally influ-
enced and which is amply sufficient to account for the act,
the inference is, practically speaking, reduced to zero."

If the landowner is to be held responsible for injuries re-
sulting from an entry by a child upon his premises, merely
because he has placed there something which presents a tempta-
tion to the child that it cannot (or, rather, does not) resist,
although the entry is not only without his consent but against
his desire, why, in principle, is he not equally responsible for
injuries received by an adult trespasser who yields to the
temptation presented by a dangerous attraction which is placed
upon the land, particularly if such trespasser be so constituted
mentally as not to appreciate the impropriety of his entry or
to understand the danger which he is incurring?

The viciousness of the reasoning which fixes liability upon
the landowner because the child is attracted, lies in the as-
sumption that what operates as a temptation to a person of
immature mind, is, in effect, an invitation. Such an assump-

tion is not warranted. As was said by Mr. Justice Holmes, in *Holbrook* v. *Aldrich*, 168 *Mass.* 16, "temptation is not always invitation; as the common law is understood by the most competent authorities, it does not excuse a trespass because there is a temptation to commit it, or hold property-owners bound to contemplate the infraction of property rights because the temptation to untrained minds to infringe them might have been foreseen."

No good purpose will be effected by discussing here the various cases which have been supposed to sustain the doctrine first put forward in *Railroad Company* v. *Stout, supra.* I refer to cases like *Bird* v. *Holbrook*, 4 *Bing.* 628, where the plaintiff was injured, while trespassing upon the lands of the defendant, by the discharge of a spring-gun which had been set by the defendant for the protection of his property against thieves; *Townsend* v. *Wathen*, 9 *East* 277, where the plaintiff's dogs were caught and killed in traps set by the defendant upon his premises and baited with decaying meat, for the purpose of entrapping his neighbor's dogs; and *Lynch* v. *Nurdin*, 1 *Ad. & E.* (*N. S.*) 29, where the plaintiff, a child, was injured while playing with a horse and cart which the defendant's servant had carelessly left standing unguarded in the public highway. That they are not, in fact, authority for any such doctrine is clearly shown by Mr. Justice Peckham, in Walsh *v.* Fitchburg Railroad Co., and by Mr. Justice Lathrop, in *Daniels* v. *New York, &c., Railroad, supra.*

The *general* rule with regard to the duty which a landowner owes to persons coming upon his premises is that where the entry is made by his invitation, either express or implied, he is required to use reasonable care to have his premises in a safe condition; but that where the entry is made merely by his permission (and, *a fortiori*, where it is an actual trespass) the landowner is under no obligation to keep his premises in a non-hazardous state; his only duty to a licensee or a trespasser is to abstain from acts willfully injurious. And this rule has been frequently enforced by the courts of this state. *Phillips* v. *Library Company*, 26 *Vroom* 307; *Mathews* v. *Bensel*, 22 *Id.* 30; *Vanderbeck* v. *Hendry*, 5 *Id.* 467; *Fitz-*

*patrick* v. *Glass Manufacturing Co., ante* p. 378 ; *Turess* v. *New York, Susquehanna and Western Railroad Co., supra.*

In the cases of· *Frost* v. *Eastern Railroad, supra; Daniels* v. *New York, &c., Railroad, supra; Walsh* v. *Fitchburg Railroad Co., supra,* and *Turess* v. *New York, Susquehanna and Western Railroad Co., supra* (in which, as has already been stated, the courts of New Hampshire, Massachusetts, New York and our own Supreme Court have refused to adopt the rule of liability as declared in *Railroad Company* v. *Stout, supra,* and the cases which followed it), the basis of decision was the rule just adverted to.

In the New York case the infant plaintiff was conceded to have been upon the defendant company's premises by its permission ; in the Massachusetts and New Hampshire cases he was a mere trespasser. In each case the conclusion was that a licensee or a trespasser who entered upon the lands of another assumed all risk of danger which was incident to the condition of the premises ; that the landowner was not responsible for injuries received by him unless they were intentionally inflicted, and that the fact of the licensee or trespasser being an infant of tender years afforded no reason for modifying the rule and charging the landowner with a duty which did not otherwise exist. In *Vanderbeck* v. *Hendry, supra; Fitzpatrick* v. *Cumberland Glass Co., supra,* and *Turess* v. *New York, Susquehanna and Western Railroad Co.,* ·*supra,* our Supreme Court took a similar view, holding in each case that the infancy of the plaintiff afforded no ground for a recovery against the landowner.

In my judgment the reasons upon which the doctrine of a landowner's liability for injuries received by children entering upon his premises is rested do not justify such a material restriction upon the full and untrammeled enjoyment of real property. On the contrary, it seems to me that the doctrine of non-liability promulged by the line of cases last referred to is more in accord with settled principles, and should, therefore, be adopted by this court. I conclude, therefore, that there was error in submitting to the jury the question whether, under the circumstances of this case, the defendant company

was chargeable with the duty of providing for the safety of the plaintiff. The trial judge should have directed a verdict for the defendant.

The judgment below should be reversed.

COLLINS, J. (concurring). The trial judge expressly charged the jury that proprietors of land are " liable for injuries resulting to children, although trespassing at the time, when, from the peculiar nature and open and exposed position of some dangerous defect or agent, the owner should reasonably anticipate such an injury to flow therefrom as actually happens;" and, in effect, he also charged that if " the turntable was from the construction and location, as to children of tender years, a dangerous and at the same time an alluring machine, one which, when seen, would allure children to come upon it for the purpose of playing upon it," or if " it was located in such proximity to the public highway, or the locality was such a public one that it might be reasonably anticipated that children would be allured to it," then a duty was due from the defendant " to exercise due care to protect children of tender age from injury." Exception was duly taken.

The Chief Justice, in repudiating like assumptions in the Turess case, now approved, gave conclusive reasons for holding them erroneous, and, for those reasons, I vote to reverse the judgment now before us.

Mr. Justice Gummere correctly recites the untenable theory upon which this case was left to the jury, and nothing more is rightly now involved. The question of duty to children, who, by license of the owner, are upon private property in proximity to an alluring danger, is not at present open for decision.

*For affirmance*—DIXON, LUDLOW, KRUEGER. 3.

*For reversal*—THE CHANCELLOR, COLLINS, DEPUE, GUMMERE, LIPPINCOTT, VAN SYCKEL, ADAMS, HENDRICKSON, NIXON, VREDENBURGH. 10.