Va.]          Connelly *v.* West. Union Tel. Co.          51

Syllabus.

# Richmond.

## Connelly v. Western Union Telegraph Company.

### January 23, 1902.

1. Damages—*Mental Anguish—Telegraph Companies.*—Damages for mental suffering, independent of any injury to person or estate cannot be recovered against a telegraph company for negligent failure to deliver a message as promptly as possible, although the company is advised of the character of the message. The injuries in such cases are too hard to determine with any reasonable certainty, are more often assumed than real, and the suit is too liable to be wholly speculative. Damages such as are recoverable at common law must not only be the proximate result of the act complained of, but they must be certain and definite, and not speculative in their character.

2. Damages—*Code, Sec. 2900—Violation of Statute—Code, Sec. 1292.*—The purpose of Sec. 2900 of the Code in allowing damages to any person injured by the violation of any statute was merely to preserve to the person injured the right to maintain his action for the injury he may have sustained by reason of the wrong-doing of another, and to prevent the wrong-doer from setting up the defence that he had paid the penalty of his wrong-doing under a penal statute. It was not intended to create a new ground for bringing an action for damages, and will not support an action for mental anguish only, although the defendant may have violated the provisions of Sec. 1292 by failing to deliver promptly a telegram.

3. Telegraph Companies—*Special Damages Under Act March 2, 1900—Mental Anguish.*—The Act of March 2, 1900 (Acts 1899-1900, p. 724), subjecting telegraph companies to special damages occasioned by the negligent failure of their agents to deliver dispatches, and allowing the jury, in the determination of the *quantum* of damages to consider the grief and mental anguish occasioned to the plaintiff by such negligent failure, does not give any new cause of action for damages. To justify a recovery under this statute, the plaintiff

must show (1) the negligent failure of defendant's agent in deliver-
ing the message, and (2) *special damages* resulting to the plaintiff
therefrom. Special damages must be alleged and proved, and then
only can the jury add the additional sum for the grief and mental
anguish occasioned the plaintiff by the negligent failure of defend-
ant's agent. The act, taken as a whole, is substantially declaratory
of the pre-existing law, and does not give a cause of action for mere
mental anguish suffered from a failure to deliver a social telegram.

Error to a judgment of the Corporation Court of Buena
Vista, rendered August 23, 1900, in an action of trespass on
the case, wherein the plaintiff in error was the plaintiff, and the
defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Hugh A. White* and *H. S. Rucker*, for the plaintiff in error.

*George A. Fearons, Stiles & Holladay* and *Scott & Staples,*
for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The plaintiff in error brought this action of trespass on the
case against the defendant in error, in the Corporation Court
for the city of Buena Vista, claiming damages to the amount
of $1,800 for mental suffering occasioned him by the non-de-
livery of a telegraphic message announcing the death of his
father. The declaration contains two counts. The first alleges
a statutory cause of action, and the second alleges solely the
violation of a common law duty, and a common law remedy.
There was a demurrer to the declaration, which was sustained,
and the action dismissed. To this judgment a writ of error was
awarded by one of the judges of this court.

The material facts alleged in the declaration are that on
June 11, 1900, at Richmond, Virginia, a message was delivered
to the defendant in error, a telegraph company, engaged in the

business of sending and delivering telegraphic messages for
hire, directed to the plaintiff in error, at Buena Vista, signed
"Little Sisters," announcing the death of the father of plaintiff
in error.  This message was to be transmitted to Buena Vista,
Va., to be delivered to plaintiff in error, a resident of that place.
It was received by the telegraph company at Richmond, trans-
mitted to Buena Vista, and there received by the agent of the
company at 9:03 A. M. of that day.  The message was not de-
livered as promptly as practicable to the sendee; it is alleged,
and not delivered at all until some days thereafter, when he,
hearing that a message for him had been received, called at the
office of the company and got it.  It is further alleged that by
reason of the failure on the part of the telegraph company to
deliver promptly the message, plaintiff in error was greatly
troubled and damaged, in that he was deprived of being present
at his father's funeral, and thereby suffered great grief and
mental anguish.

It will be observed that while defendant in error is engaged
in the business of sending messages "for hire," it does not ap-
pear that any tolls were paid or tendered to the company for
receiving, transmitting, or delivering the message.  It is set
out in full in the declaration, and is marked "D. H. Charity,"
and was presumably a charity message.  In the view, however,
that we take of the case, this is immaterial.  The question to
be determined, for the first time by this court, is, whether or
not damages for mental suffering can be recovered in actions of
this kind, independent of any injury to person or estate, where
the telegraph company is advised of the character of the mes-
sage, and fails to deliver it as soon as practicable.

Damages such as are recoverable at law must not only be the
proximate result of the act complained of, but must also be
capable of definite ascertainment, or, to use the language of
law writers and the decided cases, must be certain, definite, and
not speculative in their character.  Under this rule, damages

for mental suffering alone, as an independent cause of action, were never allowed at common law. An illustration is in the case of an action of a father for the seduction of his daughter. There no action would lie against the seducer, no matter how aggravated, nor how great the mental anguish, unless it was alleged and could be proven that the father, by reason of the wrongful act of the defendant, had sustained the loss of the services of his child, and thus some special damage shown. When this was shown, in aggravation of the damages, as a punishment for the wrong doing, damages for mental suffering were allowed. *Lee* v. *Hodges*, 13 Gratt. 726.

This is also true of an action for slander and libel. No matter how great the mental suffering, from an insult or a charge of being guilty of degrading acts not amounting to a crime, such as being a black-leg, cheat, etc., no action would lie, unless special damage, apart from the mental suffering, was shown.

In actions for assault and battery, false imprisonment, and kindred wrongs, damages for mental suffering are allowed as a punishment, and then only because some actual damage, apart from the mental suffering, must necessarily be inferred from the act itself.

In the case of a physical injury, damages for pain suffered, bodily and mentally, are allowed, for the reason that such mental suffering is necessarily a part of the physical injury, and inseparable therefrom. *Kennon* v. *Gilmer*, 131 U. S. 22; *N. & W. Ry. Co.* v. *Marpole*, 97 Va. 600, and authorities cited.

The rule of the common law, that damages for mental suffering are not allowable, save as incidental to a physical injury, and except in that class known as vindictive actions, came under review in the case of *Allsop* v. *Allsop*, 5 H. & N. Reps. 534. That was an action arising from an illness caused by slanderous words, and the court was unanimously of the opinion that the demurrer to the declaration should be sustained. Bramwell, B., in his opinion, said: "The question seems to me one of

some difficulty, because a wrong to the female plaintiff who becomes ill, and therefore there is damage alleged to be flowing from the wrong; and I think it did in fact so flow. But I am struck by what has been said as to the novelty of this declaration—that no such special damage ever was heard of as a ground of action. If it were so, I am at a loss to see why mental suffering should not be likewise. It is often adverted to in aggravation of damages as well as pain of body. But if so, all slanderous words would be actionable. Therefore, unless there is distinction between the suffering of mind and the suffering of body, this special damage does not afford any ground of action."

The question came up again in *Lynch* v. *Knight*, decided by the House of Lords in 1861, 9 H. of L. Cas. 592, where the same view of the law was taken. Lord Brougham said: "I think that *Allsop* v. *Allsop* was well decided, and that mere mental suffering or sickness, supposed to be caused by the speaking of words not actionable in themselves, would not be special damage to support an action."

In a concurring opinion by Lord Wensleydale this language is used: "Mental pain or anxiety the law cannot value, and does not pretend to redress, when the unlawful act complained of causes that alone; though where a material damage occurs, and is connected with it, it is impossible a jury, in estimating it, should altogether overlook the feelings of the party interested."

It is conceded in nearly all of the decided cases in this country, and by the text-writers, that the general rule which has come down to us from England is that mental anguish and suffering resulting from mere negligence, unaccompanied with injuries to the person, cannot be made the basis of an action for damages.

To examine all of the American authorities dealing with this question would protract this opinion to too great a length, and we shall not attempt to do more than to review a few of the

leading cases which are departures from the common-law rule, as well as some adhering to it.

In 1861, the Supreme Court of Texas, in *So Relle* v. *W. U. Tel. Co.*, 55 Tex. 308, made the first departure from the common-law rule, and held that the addressee of a telegraph message might recover from the company, as compensatory damages, for mental suffering caused by its failure to deliver promptly a message which announced the death of his mother, by reason of which default he failed to attend her funeral. The cases cited by the court in support of its ruling were *Hays* v. *Railroad Co.*, 46 Tex. 279; *Railroad Co.* v. *Randall*, 50 Tex. 261; and *Phillips* v. *Hoyle*, 4 Gray, 568. The first of these cases was an action for assault and battery. The second was a case in which a serious and permanent personal injury had been sustained, and the third was a case where the wrongful act charged was the seduction of the plaintiff's daughter. In all of them, as a matter of course, and in accordance with generally admitted rules, damages for mental suffering were allowed. The main reliance, however, of the Texas court was placed on the following passage from the text of Shear. & Red. Neg. (4th ed.), sec. 756: "In case of delay or total failure of delivery of messages relating to matters not connected with business, such as personal or domestic matters, we do not think that the company in fault ought to escape with mere nominal damages on account of the want of strict commercial value in such message. Delay in the announcement of a death, an arrival, the straying and recovery of a child, and the like, may often be productive of an injury to the feelings which cannot be estimated in money, but for which a jury should be at liberty to award fair damages."

In *Railroad Co.* v. *Levy*, 59 Tex. 563, the court went counter to the view taken in the *So Relle case*, and held that if the plaintiff is not entitled to recover even nominal damages, as for breach of contract, and has sustained no injury to his person, reputation or property, he can have no recovery for mental dis-

tress alone. And another case, *Railroad Co.* v. *Levy,* same Vol. 542, appears to hold that if nominal damages are proved, then a recovery may be had for mental suffering, but only in cases where there was such gross negligence or willfulness as to justify exemplary damages. But both of these cases have been overruled in later decisions of the same court, particularly in · the case of *Stuart* v. *Telegraph Co.,* 66 Tex. 580; so that the So *Relle case* has been reinstated as the law of Texas, and has been followed in a number of decisions of the same court, and by the courts of a few of the other States, notably *Chapman* v. *Telegraph Co.,* 90 Ky. 263; *Telegraph Co.* v. *Adair,* 89 Ala. 510; *Reese* v. *Telegraph Co.,* 123 Ind. 294; *Young* v. *Telegraph Co.,* 107 N. C. 370 (11 S. E. 1044); *Thompson* v. *Telegraph Co.,* 107 N. C. 449 (12 E. 427); *Wadsworth* v. *Telegraph Co.,* 86 Tenn. 695.

The decisions of the Texas Supreme Court have not been themselves harmonious and have been criticised, in some instances, severely by law writers and in the decided cases. In fact, the earlier decisions have not escaped the criticism of the same court in later decisions.

In *Rowell* v. *Telegraph Co.,* 75 Tex. 26, the plaintiff and his wife had received information of the dangerous illness of her mother. Subsequently, a dispatch was sent containing the information of the mother's improved condition. This dispatch the company failed to deliver. Suit was brought, but recovery denied, the court saying: "The demurrer was properly sustained. The damage here complained of was the mere continued anxiety caused by the failure to promptly deliver the message. Some kind of unpleasant emotion in the mind of the injured party is probably the result of a breach of contract in most cases. But the cases are rare in which such emotion can be held an element of the damages resulting for the breach. For injury to feelings in such cases, the courts cannot give redress. Any other rule would result in intolerable litigation."

We fail to appreciate the distinction the court seeks to draw in that case, and it has been suggested in later decisions of the courts of other States, that it was evidently resorted to for the purpose of staying the tide of "intolerable litigation" flowing from the decisions following the *So Relle* case.

The case of *Wadsworth* v. *Telegraph Co.* (Tenn.), *supra,* was well considered, and argued to a conclusion upon general principles of law, but the plaintiff's right of action was upheld, as a statutory, and not a common law, right.

*Chapman* v. *Telegraph Co., supra,* cites only a Texas case, and *Wadsworth* v. *Telegraph Co., supra,* as authority for the conclusion reached. The case of *W. U. Telegraph Co.* v. *Adair* (Ala.), *supra,* only to a limited degree sustains the doctrine contended for by plaintiff in error. There were other features in the case than mere mental suffering as a basis of the action, and it may be said that the observations of the court as to the right of recovery of damages for mental suffering alone was *dictum* only, and for its conclusion the court relied mainly on its own decisions and a Texas case.

In *Young* v. *Telegraph Co.* (N. C.), *supra,.* the message was: "Come in haste; your wife is at the point of death," and the company failed to deliver the same for eight days. The court conceded that the great weight of authority was against a recovery in that case, but, relying mainly upon the Texas cases and those following them, took the broad ground that the action was in reality in the nature of tort for the negligence, and that, as is usually the case in such actions, the plaintiff was entitled to recover, in addition to nominal damages, compensation for the actual damages done him, and that mental anguish is actual damage. The case of *Reese* v. *Telegraph Co.,* 123 Ind. 294, is greatly relied on by plaintiff in error here, and in the cases we have just reviewed, and it is in accord with the view they contend for, but *Reese* v. *Telegraph Co.* has, by a decision of the same court rendered May 28, 1901—*W. U. Telegraph Co.*

v. *Ferguson*, 60 N. W. 674—been, in express terms, overruled.
In the last case the message was: "Grandma is dead. Will be
buried Thursday two o'ck, come." Says the opinion by Baker,
J.: "By the failure to deliver, appellee received neither pe-
cuniary nor bodily injury, but suffered mental anguish conse-
quent upon his being deprived of the opportunity of attending
his grandmother's funeral. . . . Though courts should and do
extend the application of the rules of the common law to the
new conditions of advancing civilization, they may not rightly
create a new principle unknown to the common law, nor abro-
gate a known one. If new conditions cannot be properly met
by the application of existing laws, the supplying of the need-
ful law is the province of the Legislature, not the judicial de-
partment."

Nearly all of the authorities holding a contrary view are re-
viewed by the learned judge, and a great number are cited in
support of the conclusion that the demurrer to the declaration
was properly sustained. An examination of the citations dis-
closes that a very great majority of the decisions of the courts
of the different States of the Union are in accord with the
ruling in the case.

Every Federal court before which the question has arisen has
taken the view that damages for mental suffering alone cannot
be recovered. *Chase* v. *Telegraph Co.*, 44 Fed. Rep. 554
(Ark.); *Crawson* v. *Telegraph Co.*, 47 Fed. Rep. 544 (Ga.);
*Tyler* v. *Telegraph Co.*, 54 Fed. Rep. 634 (Va.); *Kester* v.
*Telegraph Co.*, 55 Fed. Rep. 603 (Ohio); *Gahan* v. *Telegraph
Co.*, 59 Fed. Rep. 433 (Minn.); *Telegraph Co.* v. *Wood*, 57
Fed. Rep. 471, U. S. Cir. Ct. App. term, 1893; *Chicago &c.
R. R. Co.* v. *Caulfield*, 11 C. C. A. (U. S.), 552—though it is
conceded in one case that if there had been such gross negli-
gence on the part of the agents of the company as to indicate a
wanton or malicious purpose in failing to transmit or deliver the
message, the plaintiff's mental suffering might have been con-
sidered. *Crawson* v. *Telegraph Co., supra.*

As was said by Canty, J., in a concurring opinion in *Francis* v. *Telegraph Co.* (Minn.), 25 L. R. A. 414: "The difficulty in such cases is the character of the damages claimed. The injuries in such cases are too hard to determine with any reasonable certainty—are more often assumed than real; and the suit too liable to be wholly speculative. If everyone was allowed damages for injuries to his feelings caused by some one else, the chief business of mankind might be fighting each other in the courts. Damages for mental suffering open into a field without boundaries, and there is no principle by which the court can limit the amount of damages. Mere logic will not dispose of a question of this character. The court must keep one eye on the theoretical, and the other on the practical. At the same time I am strongly of the opinion that there should be some practical remedy in this class of cases, and, if the Legislature would provide for the recovery to, say two or three hundred dollars, there would not be the same incentive to bring speculative suits, or to employ experts to draw on their own imagination for the purpose of. proving the condition of plaintiff's imagination; there would not be so much elaborate preparation to impose on the jury. But, if the court should allow such damages at all, on no principle could it thus arbitrarily limit the amount of recovery and escape the evils mentioned."

In the recent case of *Davis* v. *W. U. Telegraph Co.*, 46 W. Va. 48, the rule of law as stated in 1 Amer. & Eng. Ency. L. 862, is cited with approval, viz: "A rule that is more consistent with recognized legal principles, and that is supported by better authority, is that mental suffering alone, and unaccompanied by other injury, cannot sustain an action for damages, or be considered as an element of damages. Anxiety of mind and mental torture are too refined and too vague in their nature to be the subject of pecuniary compensation in damages, except where, as in case of personal injury, they are so inseparably connected with the physical pain that they cannot

be distinguished from it, and are, therefore, considered part of it."

We come now to the consideration of the legislation in this State upon this subject, and upon which plaintiff in error relies as a basis for the first count in his declaration, in which the damages claimed are the same as in the second count, *i. e.*, damages for mental anguish or suffering, standing alone.

Section 1291 of the Code relates to "the receipt and transmission of dispatches," and section 1292 to "their delivery." That first declares that it shall be the duty of the telegraph company to receive dispatches "and upon the payment of the usual charges therefor, to transmit the same," under a penalty of $100 to the sender; and the second provides that upon the arrival of the dispatch at the point of its destination it shall be delivered as promptly as practicable, under a penalty of $100 to the addressee. These statutes are similar to those of Indiana regulating the business of telegraph companies, considered by the Supreme Court of that State in *Telegraph Co.* v. *Ferguson, supra*.

Section 2900 of the Code, under the title: "Damages from violation of a statute," provides: "Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed; unless the same be expressly mentioned to be in lieu of such damages." And the Act of March 2, 1900, Acts 1899-1900, p. 724, provides: "That all telegraph companies shall be liable for special damages occasioned in receiving, copying, transmitting, or delivering dispatches, or for the disclosure of the contents of any private dispatch to any person other than to him to whom it was addressed, or his agent, the amount of these damages to be determined by the jury upon the facts in each case. Grief and mental anguish occasioned to the plaintiff by the aforesaid negligent failures may be considered by the jury in the determination of the *quantum* of damages.

"Special damages recoverable under this act shall not be barred by regulations of the company concerning the repeating of messages, or by any special understanding to relieve the company from the consequences of its own negligence.'"

Section 2900 of the Code takes the place of sections 2 and 3, chapter 65, of the Code of 1873, and it is claimed by plaintiff in error that under the construction of that statute by this court in *W. U. Telegraph Co.* v. *Reynolds*, 77 Va. 173, he may recover in this action any damages a jury may assess, where a violation of a statute has been shown. The "violation of the statute" in Reynolds' case, was a patent and admitted feature. Damages were sustained by the plaintiff—legal damages, and to a definite and admitted extent. Lacy, J., in the opinion says: "And it is admitted, and is equally clear from the evidence in this case, that the actual loss to Reynolds Brothers was the amount found by the jury of $1,347.10, nothing being added by the jury as punitive or vindictive damages."

The only point decided in that case was that a telegraph company is liable for the actual, ascertained money loss on a business transaction, resulting directly from its negligence in failing to transmit a dispatch upon which the usual charges of the company had been paid, whether the dispatch was understood by the company or not. There is nothing whatever in the opinion to sustain the view that under the statute damages may be recovered for mental suffering as an independent cause of action. That question was not involved in the case, and was not adverted to.

Section 2900 came under review in *Tyler* v. *W. U. Telegraph Co., supra*, where it is well said by Paul, J.: "It is very evident that the purpose of section 2900 was merely to preserve to any injured person the right to maintain his action for the injury he may have sustained by reason of the wrong-doing of another, and to prevent the wrong-doer from setting up the defence that he had paid the penalty of his wrong-doing under a penal sta-

tute.   It cannot be supposed that, in enacting section 2900, the
Legislature had the remotest idea of creating any new ground
for bringing an action for damages.   It was only intended to
keep the subject just where it was under the common law be-
fore the enactment of section 1292, prescribing the duties of
telegraph and telephone companies, and fixing a penalty for
their failure to perform said duties."

Nor is there anything in the Act of March 2, 1900, that can
be construed as creating any new ground for bringing an action
for damages.   That statute provides, first, that telegraph com-
panies shall be liable for *special damages* occasioned by the
*negligent failure* of their operators in delivering dispatches.   It
then provides that, in the determination of the *quantum* of
damages, the jury may consider "grief and mental anguish"
occasioned to the plaintiff by the *negligent failure.*

It is *special damages* occasioned by the negligent failure of
the defendant in delivering a dispatch that the statute confers
the right upon the plaintiff to recover, and when he has alleged
and proven that he is entitled to recover such damages, the
jury may then, in fixing the *quantum* of damages, consider his
mental anguish occasioned by the defendant's negligent failure
to deliver the dispatch.   "*Quantum*," according to Webster,
means "quantity," "amount;" and "amount," "the sum total
of two or more particular sums or quantities;" "the aggregate;
the whole quantity; a totality."

To recover under the act in question, two things are neces-
sary to be shown:   (1) Negligent failure on the part of the
operator of the defendant company in delivering the message;
and (2) special damages resulting to the plaintiff therefrom.
Neither of these grounds of action are alleged in this case.
The first sentence of the act is plainly declaratory of the com-
mon law, and the whole act taken together is substantially
declaratory of the pre-existing law.   The rule governing in the
construction of such statutes laid down in *Arthur* v. *Bokenham,*

11 Mod. 150, seems to have been universally followed, viz: "The general rule in the exposition of all acts of Parliament is this, that in all doubtful matters, and where the expression is in general terms, they are to receive such construction as may be agreeable to the rules of the common law in cases of that nature; for statutes are not presumed to make any alteration in the common law further or otherwise than the act does expressly declare; therefore, in general matters, the law presumes the act did not intend to make any alterations, for if the Parliament had that design, they would have expressed it in the act."

If the purpose and intention of the Legislature had been by the statute of March 2, 1900, to make a new cause or ground of action, viz: for the recovery of damages for mental anguish alone, it is inconceivable that other and more apt phraseology should not have been employed.

In a proper case, under the statute, the plaintiff may recover any *"special damages"* alleged and proven to have been occasioned by the negligent failure of the operators or servants of a telegraph company in receiving, copying, transmitting, or delivering a dispatch, whether such negligent failure occasioned him grief and mental anguish or not, but the converse of the proposition cannot be true, because the jury are not authorized to consider the grief and mental anguish of the plaintiff except in determining the *quantum* of damages—*i. e.,* the amount of special damages alleged and proved, together with such additional sum as may be added thereto for the grief and mental anguish occasioned the plaintiff by the negligent failure of the defendant's operators or servants.

Any other construction of the statute would result, as did the departure from the common law in like cases, in a fruitful source of litigation, and open into a field without boundaries, for the recovery of speculative, sentimental and other like damages.

We quote with our unqualified approval the following from

the opinion in *W. U. Telegraph Co.* v. *Ferguson, supra*: "There is no open or practicable means by which the damages occasioned by a negligent act that causes only mental anguish can be assessed. On account of mere difficulties, courts do not and should not falter at finding remedies; but it is not a question of difficulties purely when it is proposed to violate the natural principles of justice and fair play. The parties to a law suit should have an even chance. The damage for which plaintiff seeks compensation should be shown by evidence that the defendant may test, impeach, refute. When the plaintiff asks to recover damages for physical injuries, open or hidden, the court may require him, as a condition of prosecuting his case, to submit his person to examination by medical experts, who may be called as witnesses by the defendant. . . . The determination of the nature and extent of the physical hurt is not dependent upon the eloquence of the plaintiff as a witness, but upon the eloquence of the facts, established by the evidence on both sides, which may not have included the verbal testimony of the plaintiff at all. Now, the mental anguish for which damages are allowable is incident to and dependent upon the nature and extent of the physical injury. And although there can be no absolute standard for measuring mental anguish in terms of money, nor for measuring physical injuries, yet it is apparent that the differences between the physical injuries in two cases, established by evidence open to both sides, furnish a means of testing in some degree the existence and extent of the mental anguish of the respective plaintiffs outside of their mere assertions. The difference between the mental anguish caused by the presence of a scar on a man's body, and that produced by the same kind of a scar upon a woman's face, would hardly be decided in favor of the man, although he alone of the two possessed the vocabulary necessary for a vivid description of the alleged tortures of mind. Even in the case of libel, malicious prosecution, and the like, in which punitive damages

may be added to compensatory, the mental anguish of which cognizance is taken is measurable by the enormity of the willful offence, the nature and extent of which are established by the evidence open to both sides. But the mental anguish doctrine awards damages for a state of mind that is not at all dependent upon or measurable by a cause of action existing outside the mental contemplation of the plaintiff, and provable by evidence open to both parties. If psychometry could determine the difference in the plaintiff's consciousness before and after the defendant's negligent act, it would take something still more occult to measure how much of the total disturbance was attributable to the death of the relative, and how much to being prevented from attending the funeral. Manifestly the defendant is not to pay for the mental anguish caused by the death of the relative. The alleged actionable wrong is in depriving the plaintiff of the opportunity of attending the funeral. But would the plaintiff have accepted the opportunity if seasonably offered? If the defendant is to be mulcted for mere delay, even though the plaintiff would not have gone to the funeral in any event, the damages would be wholly punitive. There would be no loss to compensate. And so in this case (and probably the same thing has been true in all), the plaintiff was asked the following questions:

" 'Q. Suppose the telegram had been delivered to you on the evening of July 13, 1898, could you have reached her funeral by 2 o'clock on the 14th? A. I could. Q. I will ask you whether or not you would have done so? A. I would, sir; I would.' The plaintiff says he would have gone. But would he? The jury found so, as a fact, wholly from the plaintiff's present opinion on a past condition of things that never existed, but is now summoned before the mind by conjecture. Thus the mental anguish doctrine not only departs from principle in regard to measuring compensatory damages, but also warps the rules of evidence, which forbid a witness to testify what he would or would not have done in a stated contingency."

A striking illustration of the extent to which the doctrine condemned in the opinion just quoted from would lead is afforded by the case at bar. Here the plaintiff in error seeks to recover damages for alleged mental anguish occasioned him by the failure on the part of the defendant company's operator to deliver promptly a dispatch sent him by the company from Richmond, as a charity message, announcing the death of his father, and without alleging that the failure to deliver the message was a "negligent failure," and without alleging that he was able and would have attended the funeral of his father had the message been promptly delivered to him.

"It is contrary to public policy (corruptive of public morals) for the courts to tie the hands of a defendant, and give the freest hand in collecting compensatory damages to the plaintiff, who is most moving in depicting an alleged physical condition, and readiest to declare what he would have done under circumstances that never occurred.

"Denial of equal justice, wrongful discrimination between persons in similar circumstances, is at least as vicious in judgemade as in statutory law. *Yick Wo* v. *Hopkins*, 118 U. S. 356. . . . To be a law of equal justice and no discrimination, the mental anguish doctrine should assert, as a broad general principle, that damages are recoverable, for mental distress alone, from every person whose negligent act causes that condition." *W. U. Telegraph Co.* v. *Ferguson, supra.*

Upon reason and a great weight of authority, such damages are not recoverable at common law, as an independent cause of action, and until our Legislature deems it wise to authorize such a recovery, the courts cannot sustain it. Our statutes thus far impose a penalty for the dereliction on the part of a telegraph company in the transmission and delivery of dispatches entrusted to it, and authorize the recovery of special damages occasioned the injured party thereby, to which may be added such damages as the jury may assess for his grief and mental suffering, but they go no further.

---

Opinion.

---

It is claimed, however, for plaintiff in error, that this court has sanctioned his right of recovery in this case by its decision in *Norfolk & W. Railway Co.* v. *Neeley*, 91 Va. 546. That case was not one of mere mental anguish. Neeley, the plaintiff, suffered other wrongs, inconveniences and damage, to which, according to the doctrine of well recognized authorities, damages for his injured and insulted feelings might well be added.

We are of opinion that the judgment of the Corporation Court of Buena Vista, sustaining the demurrer to plaintiff in error's declaration, is right, and it is affirmed.

*Affirmed.*