Statement.

## Richmond.

WALKER'S ADMINISTRATOR v. POTOMAC, FREDERICKSBURG AND
PIEDMONT RAILROAD COMPANY.

March 22, 1906.

Absent, Cardwell, J.

1. RAILROADS—*Turntables—Infant Trespasser—Liability for Injury.*—A
railroad company is not liable for an injury inflicted on an infant
of tender years by an unfastened and unenclosed turntable erected by
it on its own premises in an open and unoccupied field, not adjacent
to any public highway, where the infant was at the time a tres-
passer.   A landowner does not owe to a trespasser the duty of
having his land in a safe condition for a trespasser to enter upon,
and this rule applies as well to infants as to adults.   The fact that
a turntable, so located, is attractive to infants does not render the
company liable, nor does the maxim *sic utere tuo* apply to such a
case.   This maxim refers only to acts of the landowner, the effects
of which extend beyond the limits of his property.

Error to a judgment of the Circuit Court of Orange county
in an action of trespass on the case.   Judgment for the defen-
dant.   Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Morton & Shackelford* and *Meredith & Cocke,* for the plain-
tiff in error.

*St. George R. Fitzhugh* and *J. G. Williams,* for the defendant
in error.

BUCHANAN, J., delivered the opinion of the court.

This action was instituted by the plaintiff in error against the defendant company to recover damages for the death of his intestate, caused by the alleged negligence of the defendant.

The evidence shows that the defendant has a turntable on its own premises near Orange Court House, located about 220 feet from its station or depot; about 360 feet from the public road which runs from the depot to the village of Orange Court House; close by a mill-road, which is not public; fifty or sixty feet from what is known as the horse-show grounds; about 340 feet from any inhabited house; and in an open and unoccupied field; that boys were in the habit of playing ball on the horse-show grounds, between which and the railway land there was no fence; that boys frequently rode on the turntable, and had once been seen riding on it by the depot agent; that some years before the accident two boys had been injured in playing with the turntable, which was of the ordinary kind in use, and was neither locked nor fastened; that on the Sunday evening of the accident the plaintiff's intestate, who was a little over twelve years of age, with two other boys of about the same age, was pushing the turntable around the track preparing to jump on it, and as he did so one of his feet was caught between the rails and mashed, causing lockjaw, from the effects of which he died.

Upon the trial of the cause there was a verdict and judgment in favor of the defendant. To that judgment this writ of error was awarded.

The only question involved in this writ of error is whether or not, under the facts of the case, which are not disputed, the defendant was guilty of negligence in leaving the turntable in the place where it was, on its own premises, unfenced and unfastened.

The general rule is that a landowner does not owe to a trespasser (and the same is true of a bare licensee) the duty of having his land in a safe condition for a trespasser to enter upon. The latter has ordinarily no remedy for harm happening to him from the nature of the property upon which he intrudes, and he takes upon himself the risks of the condition of the land, and to recover for an injury happening to him he must show that it was wantonly inflicted, or that the owner or occupant being present could have prevented the injury by the exercise of ordinary care after discovering the danger. *Norfolk & Western Ry. Co.* v. *Wood,* 99 Va. 156, 158-59, 37 S. E. 846; *Hortenstein's Admr.* v. *Va.-Carolina Ry. Co.,* 102 Va. 914, 918, 47 S. E. 996; *Williamson* v. *Southern Ry Co.,* 104 Va. 146, 51 S. E. 195; Bishop on Non-Contract Law, sec. 845; Cooley on Torts (2d ed.) 791-94.

It is not denied, as we understand the counsel for the plaintiff, that such is the common law doctrine as to adult trespassers and bare licensees; but his contention is that, under certain circumstances, such as are disclosed by this record, it is not the rule as applied to children. To sustain that contention he relies upon the case of *Sioux City R. Co.* v. *Stout,* 17 Wall. 657, 21 L. Ed. 745, and the cases which follow it.

While these cases, which are known as "The Turntable Cases," fully sustain the plaintiff's contention, there is a remarkable conflict of authority upon the subject. The doctrine announced in the *Stout Case* has been discussed in numerous cases by the appellate courts of many of the States of this country, with the result that there are many authorities sustaining the doctrine in its broadest sense; while many utterly repudiate it, and others give it a qualified recognition and practically limit it to railroad turntable cases. A question or problem which has given rise to such a wide divergence of opinion is not of easy solution.

As this is the first case involving this precise question which · has ever come to this court, so far as the reported decisions show, we are at liberty to follow that line of decisions which, in our judgment, is more nearly in accord with settled principles of law and is sustained by the better reason.

In order for the plaintiff to recover in this case it must appear that the defendant company owed his intestate some duty which it failed to discharge; for where there is no duty there can be no negligence. *N. & W. Ry. Co.* v. *Wood, supra; Hortenstein's Admr.* v. *Va.-Car. Ry. Co., supra; Carson Lime Co.* v. *Rutherford,* 102 Va. 252, 46 S. E. 304.

As before stated, the common law imposes no duty upon a landowner to use care to keep his premises in such condition that trespassers and bare licensees going thereon may not be injured. This is unquestionably the rule as to adults, and the weight of authority, as it seems to us, shows that it is the rule as to children.

The cases cited in the case of *Sioux City R. Co.* v. *Stout* to sustain the opposite view, do not, as it seems to us, do so. Those cases come within other rules, or within well defined exceptions to the general rule that a landowner owes no duty to a trespasser, adult or infant, except that he must not wantonly or intentionally injure him or expose him to danger. This is clearly shown, we think, by the Supreme Judicial Court of Massachusetts, in the case of *Daniels* v. *N. Y. & N. E. R. Co.,* 154 Mass, 349, 28 N. E. 283, 13 L. R. A. 148, 149, 26 Am. St. Rep. 253, and by Judge Peckham (now of the Supreme Court of the United States), in delivering the opinion of the Court of Appeals of New York, in *Walsh* v. *Fitchburg, &c., R. Co.,* 145 N. Y. 301, 39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615.

The conclusion reached in those cases is fully sustained by

the following cases (and many more might be cited), which are all "Turntable Cases," or cases in which the doctrine of those cases was involved. *Frost* v. *Eastern R. Co.,* 64 N. H. 220, 9 Atl. 790, 10 Am. St. Rep. 396; *Delaware, &c., Ry. Co.* v. *Reich* (N. J.), 40 Atl. 682, 41 L. R. A. 837, 68 Am. St. Rep. 727; *Uttermohlen* v. *Boggs Run, &c., Co.* (W. Va.), 40 S. E. 410, 55 L. R. A. 911, 88 Am. St. Rep. 884; *Ryan* v. *Tower* (Mich.), 87 N. W. 644, 55 L. R. A. 310, 92 Am. St. Rep. 41; *Paolino* v. *McKendall* (R. I.), 53 Atl. 268, 60 L. R. A. 133, 96 Am. St. Rep. 736; *Dobbins* v. *Missouri, &c., Ry. Co.* (Texas), 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856; *Savannah, &c., Ry. Co.* v. *Beavers* (Ga.), 39 S. E. 82, 54 L. R. A. 314.

The same conclusion was reached by this court in *Clark* v. *City of Richmond,* 83 Va. 355, 5 S. E. 369, 5 Am. St. Rep. 281. The city had made an excavation upon the land of another, into which a child of six years fell and was injured. In denying the child the right to recover in that case it was said that where the excavation is so near the highway that a traveler, by making a false step, or being affected by sudden giddiness, might be thrown into the excavation and injured, there would be a liability. "But if, in order to reach the place of danger, the party injured must become a trespasser upon the premises of another, the case will be different, for in such a case there is no breach of duty from which the liability to respond in damages can result."

But in some of the "Turntable Cases" the right to recover is maintained upon the doctrine of constructive invitation—that is, that if a person is allured, or tempted by some act of a railroad company to enter upon its lands, he is not a trespasser; and it is held that leaving a turntable unfastened or unguarded, under circumstances similar to those disclosed by this record, is such an act.

One of the cases cited and relied on to sustain this contention is the case of *Bird* v. *Holbrook,* 4 Bing. 628. The defendant in that case, for the protection of his property, some of which had been stolen, set a spring gun, without notice, in a walled garden some distance from his house. The plaintiff, who climbed over the wall in pursuit of a stray fowl, having been injured, it was held that the landowner was liable. The express object in setting the spring gun was to inflict injury—to do an intentional wrong.

Another case relied on is that of *Townsend* v. *Wathen,* 9 East 277. That was a case where a landowner had set traps on his premises near the highway, and baited them with decaying meat, so that its scent would extend not only to the highway, but beyond to the private premises of the plaintiff, whose dogs, scenting the meat, came upon the defendant's premises and were caught in a trap and thereby killed. It was held in that case that a man had no right to set traps of a dangerous description in a situation to invite, and for the very purpose of inviting, his neighbor's dogs, as it would compel them by their instinct to come into his traps. The act of the defendant in that case was not in the prosecution of his legitimate business, but as the court said was a mere malicious attempt, successful in its result, to entice his neighbor's animals upon his premises.

The gravamen of both these actions was the wrongful intention of the defendants. To liken the case of a railroad company erecting a turntable on its own premises for its own necessary purposes in the regular conduct of its business, with no desire or intention to injure anyone, to the case of a landowner setting spring guns or traps on his land for the express purpose of doing an unlawful or malicious injury, is, as it seems to us, to lose sight of the difference between negligence and intentional wrongdoing. *Walsh* v. *Fitchburg, &c., R. Co. supra; Dobbins* v. *Mo.*

*Kansas & Tex. Ry. Co.* (Texas), 41 S. W. 62, 38 L. R. A. 573, 576, 66 Am. St. Rep. 856.

"The viciousness of the reasoning," said the Court of Appeals of New Jersey, in the case of *Deleware, &c., R. Co.* v. *Reich, supra,* in discussing this question, "which fixes liability upon the landowner because the child is attracted, lies in the assumption that what operates as a temptation to a person of immature mind is, in effect, an invitation. Such an assumption is not warranted. As said by Mr. Justice Holmes (now a member of the Supreme Court of the United States), in *Holbrook* v. *Aldrich,* 168 Mass. 16, 46 N. E. 115, 36 L. R. A. 493, 60 Am. St. Rep. 364, 'Temptation is not always invitation. As the common law is understood by the most competent authorities, it does not excuse a trespass because there is a temptation to commit it'—or hold parties bound to contemplate infraction of property rights because the temptation to untrained minds to infringe them might have been forseen."

No landowner supposes for a moment that by growing fruit trees near the highway, or where boys are accustomed to play, however much they may be tempted to climb the trees and take his fruit, he is extending to them an invitation to do so, or that they would be any the less trespassers if they did go into his orchard because of the temptation. No one believes that a landowner, as a matter of fact, whether a railroad company or a private individual, who makes changes on his own land in the course of a beneficial user, which changes are reasonable and lawful, but which are attractive to children and may expose them to danger if they should yield to the attraction, is by that act alone inviting them upon his premises.

This doctrine of constructive invitation is not sustained, as it seems to us, by the English cases cited to sustain it, and has been utterly rejected by the highest courts of New Hampshire,

Massachusetts, New York, New Jersey, Rhode Island, Michigan and West Virginia.   In several other States it is limited in its operation to turntable cases.   See *Frost* v. *Eastern, &c., Ry. Co., supra; Daniels* v. *N. Y. & N. E. R. Co., supra; Walsh* v. *Fitchburg, &c., R. Co., supra;, Delaware, &c., Ry. Co.* v. *Reich, ,supra; Uttermohlen* v. *Boggs Run, &c., Co., supra; Ryan* v. *Tower, supra; Paolino* v. *McKendall, supra; Dobbins* v. *Missouri, &c., Ry. Co., supra; Savannah, &c., Ry. Co.* v. *Beavers, supra.*

The maxim, *"Sic utere tuo ut alienum non laedas,"* has been quoted in some of the "Turntable Cases," and relied on as affording a decisive reason, or ground, for establishing a duty upon the railway company, and as *per se* justifying a recovery against it.   There may be more, but there is one conclusive answer to the argument based on that maxim, and that is, that it refers only to acts of the landowner, the effects of which extend beyond the limits of his property.

In *Deane* v. *Clayton,* 7 Taunton 489, Gibbs, J., said: "I know it is a rule of law that I must occupy my own so as to do no harm to others, but it is their legal rights only that I am bound not to disturb; subject to this qualification I may occupy or use my own as I please.   It is the rights of others, and not their security against the consequences of (their) wrongs that I am bound to regard."

In *Knight* v. *Albert,* 6 Pa. St. 472, 47 Am. Dec. 478-9, where an effort was made to apply the maxim to sustain an action by the owner of cattle which had trespassed upon the lands of another and had been injured by reason of the unsafe condition of the property, Chief Justice Gibson said: "A man must use his property so as not to incommode his neighbor; but the maxim extends only to neighbors who do not, uninvited, interfere with it or enter upon it.   . . . .   If it were not so, a proprietor

could not sink a well, or a saw pit, dig a ditch or mill-race, or open a stone quarry or a manhole on his land, except at the risk of being made responsible for consequential damage from it which would be a most unreasonable requirement." *Ryan* v. *Towar, supra,* at p. 314, 55 L. R. A. See article by Judge Smith on Landowners' Liability to Children, etc., 11 Harvard Law Review 349-373, 434, 448, in which there is a valuable discussion of that whole subject.

Upon neither of the grounds relied on do we think that the common law makes it the duty of a landowner to have his premises in a safe condition for the uninvited entry of adults or children, nor to take affirmative measures to keep them off of his premises or to protect them after entry; and this view is strengthened by the fact that so many of the courts which have adopted the doctrine of the "Turntable Cases" restrict it as far as possible to turntables, and refuse to follow it to its natural and logical consequences. For if it be a rule of the common law that a landowner, who, in the reasonable and lawful use of his property, makes changes thereon which have the double effect of attracting young children to the land and at the same time exposing them to serious danger, is guilty of negligence unless he exercises reasonable care for their safety, either in keeping them off the land, or in protecting them after their entry thereon, the rule would apply not only to railroad companies and their turntables, but to all landowners who in the use of their land maintain upon it dangerous machinery, or conditions which present a like attractiveness and temptation to children. The common law applies alike to all landowners under like conditions, and it would be an anomaly to hold that a doctrine or rule of the common law, which had its origin before there were either railroads or turntables, applies only to railroad companies in the use of their lands, upon which they have dan-

gerous machinery.    While the courts should and do extend the-
application of the common law to the new conditions of ad-
vancing civilization, they may not create a new principle or·
abrogate a known one.    If new conditions cannot be properly
met by the application of existing laws, the supplying of the·
needed laws is the province of the Legislature, and not of the
judicial department of the government.    *Connelly* v. *Western*.
*Tel. Co.,* 100 Va. 59, 40 S. E. 618, 56 L. R. A. 663, 93 Am.
St. Rep. 919.    The Legislature can change the common law as-
far as may be necessary to regulate the use of turntables and·
other dangerous appliances, and leave untouched the common·
law rights of the ordinary landed proprietor.

The Court of Appeals of New Jersey, in refusing to follow
the doctrine of the "Turntable Cases," said, that the doctrine·
would require a similar rule to be applied to all owners and
occupiers of land in respect to any structure, machinery, or·
implement maintained by them, which presented a like attrac-
tiveness and furnished a like temptation to children.    "He who·
erects a tower capable of being climbed, and maintains thereon
a windmill to pump water;    .    .    he who leaves his mowing-
machine, or dangerous agricultural implement, in his fields; he·
who maintains a pond in which boys may swim in summer, and·
on which they may skate in winter; would seem to be amenable
to this rule of duty.    Climbing, playing at work, swimming and·
skating, are attractions almost irresistible to children, and every
landowner or occupier may well believe that such attractions·
will lead' young children into danger.    Many other cases of like-
character might be imagined.    In .all of them the 'Turntable
Cases,' if correct, would charge the owner    .    .    .    with the·
duty of taking care to preserve young children thus tempted on
his farm from harm.    The fact that the doctrine extends to·
such a variety of cases, and to cases in respect to which the idea

of such a duty is novel and startling, causes strong suspicions of the correctness of the doctrine, and leads us to question it." *Delaware, &c., R. Co.* v. *Reich, supra; Turess* v. *N. Y., &c., R. Co.,* 61 N. J. L. 314, 40 Atl. 614; *Uttermohlen* v. *Boggs Run, &c., Co., supra.*

The Supreme Court of Minnesota, which was one of the first to give its adherence to the turntable doctrine (*Kiffe* v. *Milwaukee, &c., Ry. Co.,* 21 Minn. 207, 18 Am. Rep. 393), in the subsequent case of *Stendal* v. *Boyd,* 73 Minn. 53, 75 N. W. 735, 42 L. R. A. 288, 72 Am. St. Rep. 597, through its Chief Justice, said: "The doctrine of the 'Turntable Cases' is an exception to the rules of non-liability of a landowner for accidents from visible causes to trespassers on his premises, and if the exception is to be extended to this case (a dangerous excavation filled with water on a city lot, in which a little boy had been drowned), then the rule of non-liability as to trespassers must be abrogated as to children, and every owner of property must at his peril make his premises child-proof."

We will conclude this opinion with the following extract from the very able opinion of Judge Denman, speaking for the Supreme Court of Texas (another of the states which had followed the turntable doctrine), in the case of *Dobbins* v. *Missouri, &c., Ry. Co.,* 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856, as expressing our views: "The difficulty," he said, "about those cases ("Turntable Cases") is, that they either impose upon owners of property a duty not before imposed by law, or they leave to a jury to find legal negligence in cases where there is no legal duty to exercise care. In those cases the courts yielding to the hardships of individual instances where owners have been guilty of moral, though not legal wrongs, in permitting attractive and dangerous turntables and water holes to remain unguarded on their premises in populous cities, to the destruction of little children, have passed beyond the safe and ancient

landmarks of the common law, and assumed legislative functions, imposing a duty where none before existed. As a police measure the law-making power may, and doubtless should, without unduly interfering with or burdening private ownership of land, compel the inclosure of pools, etc., situated on private property in such close proximity to thickly settled places as to be unusually attractive and dangerous, and impose criminal or civil liability, or both, for failure to comply with the requirements of such law. When such a duty is imposed the courts may properly enforce it or allow damages for its breach, but not before."

We are of opinion that there is no error in the judgment complained of, and that it should be affirmed.

*Affirmed.*