# Richmond.

## RICHMOND & DANVILLE R. R. CO. v. NOELL ET ALS.

### APRIL 11th, 1889.

1. RAILROADS—*Obstructing streets—Damages—Proof.*—Obstruction of streets by a railroad company, unless the train is standing to load or unload passengers, and unless a passway is left open, is unlawful (Acts 1883–'84, p. 499); and the company is liable to fine and for such damages as may be caused thereby to any person. Code, sec. 2900. But these damages must be proved, not inferred.

2. IDEM—*Killing stock—Instructions.*—Instruction that the stock reached the obstructed crossing without the negligence of the plaintiffs, then if the obstruction turned, or caused the stock to turn, up the railroad track and were killed by a passing train, then the jury shall find for the plaintiffs, is erroneous, in *assuming* as a matter of inference that the injury was caused by the obstruction.

3. IDEM—*Gross negligence—Instructions.*—Such company is liable for ordinary negligence towards stock on its track without default of the owner, and the omission of the word "gross" before the word "negligence" in an instruction in such a case is not error. *Trout* v. *Va. & Tenn. R. R. Co.* 23 Gratt., 619.

4. COURTS—*Juries—Weight of evidence.*—When the evidence is parol, any opinion of the court as to the weight, effect or sufficiency thereof, and any assumption of a fact as proved, is an invasion of the province of the jury. *Cornett* v. *Rhudy,* 80 Va., 710.

Error to judgment of hustings court of city of Danville, rendered at its April term, 1888, in an action of trespass on the case for the killing of stock, wherein J. R. Noell and Thomas Starling, partners as Noell & Starling, were plaintiffs, and the Richmond & Danville railroad company was defendant. At the trial the court gave an instruction to which the defend-

ant excepted.   The verdict and judgment were for the plaintiffs for $1,260 00.   The defendants obtained a writ of error and *supersedeas.*   Opinion states the case.

*Berkeley & Harrison* and *Staples & Munford,* for the plaintiffs in error.

*Guy & Gilliam* and *A. J. Montague,* for the defendants in error.

LACY, J., delivered the opinion of the court.

On the night of December 25th, 1887, the mules and horse in question were unloaded at the depot of the plaintiff in error, known as the "Virginia Midland railroad depot," along with others (forty-two in all) on the north side of the Dan river, the city of Danville and the depot of the Richmond & Danville railroad being on the south side of the said river. There were no cattle-pens at this depot, but the stock was all safely unloaded without accident.   The defendants in error were not able, however, or did not succeed in getting a bridle on one of the two horses brought with the mules.   The drove of forty mules, some of them unbroken, and the one loose horse, were started towards the stable in Danville, following a horse upon which a servant rode and led the horse which had been bridled.   The drove passed safely over the bridge into Danville, the scene being lighted with electric lights, and on the south side of the river the bridge abutted on two streets, Main street and Bridge street.   The servant and the lead horse passed on up Main street, and some of the mules followed after, but the loose horse and some of the mules started down Bridge street.   An assistant of the defendants in error, well mounted and an expert horseman, dashed at full speed down this last named street and attempted to head off the loose horse, now running wildly.   These passed into Craghead

street, about eighteen mules following. Down this street à short distance is the Richmond & Danville depot, situated at the point where this street crosses the Richmond & Danville railroad, and here a shifting engine was standing with some empty cars, partly, but not entire, obstructing Craghead street; these cars being gotten together to make up a train northward for Richmond, upon the arrival of the passenger train from the south, now shortly to arrive. The loose horse hesitated here, and the pursuing assistant horseman came alongside, with whip and lash, and attempted to capture, and then to turn him around; but the horse escaped, and, passing by the front of the engine standing there, dashed off up the railroad track, closely pursued by the mounted man, and the mules following. The horseman shortly turned from his pursuit of the horse and arrested eleven of these mules, and drove them back to the stable of their owners. Six of the mules, however, followed the loose horse up the track, down which then shortly came a passenger train, running down grade at a great rate of speed, and they were all killed. The passenger train came in at 1:57 A. M., and a freight train came in at 5 A. M. The stock was not seen between these hours by the owners, nor by others, except that the freight train operatives report the killing of stock—one horse and one mule—whereas the passenger train operatives make no such report, and stoutly deny it. It is, however, claimed by the defendants in error that the passenger train did the killing, because their witnesses testify that there was snow on the ground, and they did not see where the animals left the track; but it was snowing the first part of the night, and this may have obscured the tracks, and upon this point there is no special finding by the jury, and it does not appear to be very material whether one or both of these trains did the killing, as both have the same owner, there being uncontradicted evidence that each train killed some of the animals; but it is admited that the owners of these mules and their servants, after following them up the track for some dis-

tance, turned back and left them to their fate, went to bed, and did not look for them until late next day, after both trains had come down the road, and found them all dead or dying.

Upon the trial in the hustings court, the court gave certain instructions, and refused others asked for by the plaintiffs, and gave others not asked for by either party, and the defendant excepted. And the defendant asked for seven instructions, which the court gave, striking out the word "gross" in the third and fifth instructions before the word "negligence," so as to instruct the jury that the plaintiffs, under the stated circumstances, could not recover unless the defendant had been guilty of negligence, refusing to excuse except for gross negligence, and holding it responsible for negligence simply; and the defendant again excepted. The jury rendered a verdict for the plaintiffs for the damages asked for, and the defendant moved the court to set aside the verdict and grant it a new trial, which motion the court overruled, and the defendant again excepted; and, judgment being rendered in accordance with the verdict, the defendant applied for a writ of error to this court, which was awarded.

At the trial the court gave the following instruction in lieu of the sixth instruction asked for by the plaintiffs: " The jury are instructed that if they believe from the evidence that the defendant company obstructed Craghead street by the placing of its engines, coaches or cars across or upon said street at the point it crossed the railway, and that the placing of the same at the point of crossing was not for the purpose of loading or unloading passengers, and that such obstruction was the cause of the horse and mules in question being turned on and upon the road-bed of the defendant, whereby the injury complained of was sustained, they must find for the plaintiffs, unless they also believe that the plaintiffs, by the exercise of proper and reasonable care and diligence, could have prevented the escape of said animals from their control, or could have stopped them, or in some way have prevented them from reaching said point

of crossing, in which event they should find for the defendant"; the substance of which is, that if the stock reached the obstructed crossing without the negligence of the plaintiffs, then if the engine turned or caused the mules to turn up the railroad track, then the jury should find for the plaintiffs, assuming as matter of inference that the injury was caused by the obstruction, whereas the same could only be established by proof. The obstruction of the street was unlawful, unless the train was standing to load or unload passengers, and unless a passway was left open (Acts 1883–'84, p. 499), and the railroad company was liable to fine and for such damages as should be caused to any person by the violation of this statute (Code Va., sec. 2900); but these damages must be proved, not inferred. It did not follow, as matter of law, that the injury complained of was caused by the stock being turned up the railroad track, although it might have been so caused as matter of fact, and might have been believed to be so by the jury upon the evidence. It should, therefore, have been left to the jury to find the fact from the evidence, whether the injury did so result from the turning of the stock from the street to the road-bed, as it might have resulted inevitably if a train in rapid motion had been then and there present, or if a precipice or open bridge had been proximate; and so it might have resulted, although none of these were imminent, if in fact such dangers had unavoidably thereafter supervened as matter of fact; while, on the other hand, it might not so have resulted if the plaintiffs and their servants had, by due diligence, rescued the stock from the threatened danger (as they did actually rescue seventeen and bring them off in safety). The plaintiffs were not excused from making every effort to bring the stock back because the engine had obstructed the street. These mules and horses were runaway and escaped animals before they came to the crossing in question. The horses were rushing at full speed, and the mules following close behind. They were not going towards, but rapidly away from, their stables.

They were strange mules, in a strange city. They had never been to their stable, and were as likely to go one way as another in their fright and excitement, and some did go .down the railroad and were unhurt, as some went up the railroad and were killed. Whether the stock in question were killed by being turned up the railroad track or not, was a question of fact. They might have been turned up the railroad track, and still not have been killed thereby; they might have turned up the railroad track, and not have been injured at all, and they might have been turned up the railroad track and injured by some agency to which this circumstance bore no casual relation whatever. It must be considered erroneous, therefore, for the court to instruct the jury that they were injured by being turned up the railroad, and that, if the railroad company did this, then they must find for the plaintiffs, regardless of the consideration whether the plaintiffs could by due and ordinary diligence have reclaimed them unhurt, and to cut off every extenuation except such as preceded their being so turned up the railroad track. It is a fundamental maxim that the court responds to questions of law, and the jury to questions of fact. The court must decide on the admissibility of evidence, that being a question of law; but not as to its weight after it is admitted, that being a question of fact; and the decided cases, says Mr. Conway Robinson, evince a zealous care to watch over and protect the legitimate powers of a jury. They show that the court must be very careful not to overstep the line which separates law from fact. They establish the doctrine that when the evidence is parol any opinion as to the weight, effect, or sufficiency of the evidence submitted to the jury, any assumption of a fact as proved, will be an invasion of the province of the jury. 1 Rob. Pr., 338; *Cornett* v. *Rhudy*, 80 Va., 710; *McDowell* v. *Crawford*, 11 Gratt., 402; Bart. Law Pr., 214; *Baring* v. *Reeder*, 1 Hen. & M., 174; *Moore* v. *Chapman*, 3 Hen. & M., 266; *Whitacre* v. *M'Ilhaney*, 4 Munf., 310; *McRae* v. *Scott*, 4 Rand. (Va.), 463;

*Davis* v. *Miller*, 14 Gratt., 1; *Hopkins* v. *Richardson*, 9 Gratt., 456. For this error the judgment must be reversed, and it is therefore not proper now to consider the question arising upon the motion to set aside the verdict as contrary to the law and the evidence, as upon the new trial which may be had, the evidence may not be the same, and this question must depend upon what shall be then offered in evidence.

It may not be out of place, however, to observe that we have not discovered any other error in the instructions as given by the court, and the omission of the word " gross," as above stated, before the word " negligence," so as to hold the railroad liable for ordinary negligence towards stock on its track without the negligence or default of the owner, was not erroneous. *Trout* v. *Railroad Co.*, 23 Gratt., 619, and cases cited; *Railroad Co.* v. *Griffin*, 31 Ill., 303; *Battle* v. *Railroad Co.*, 66 N. C., 343; *Snecesby* v. *Railroad Co.*, L. R. 9 Q. B., 263, on appeal, 1 Q. B. Div., 42; *Needham* v. *Railroad Co.*, 37 Cal., 410; *Railroad Co.* v. *McBrown*, 46 Ind., 229; 1 Thomp., Neg., 508, sec. 11, and other cited cases. For the reasons stated, the judgment complained of must be reversed and annulled, and the cause remanded for a new trial to be had therein in the said hustings court of Danville city.

Judgment reversed.