(771 P.2d 79)

No. 61,891

SHARON LOVE, *Appellant*, v. MONARCH APARTMENTS, *Appellee*.

Opinion filed March 24, 1989.

*Richard E. Jones*, of Topeka, and *Charles S. Scott, Sr.*, of Scott, Scott, Scott & Scott, of Topeka, for the appellant.

*Rene M. Netherton*, of Topeka, for the appellee.

Before GERNON, P.J., DAVIS and ELLIOTT, JJ.

DAVIS, J.: This appeal involves questions arising under the Kansas Residential Landlord and Tenant Act, K.S.A. 58-2540 *et seq.* The tenant, Sharon Love, appeals the trial court's (1) refusal to order a full refund of her security deposit; (2) denial of statutory damages for the wrongful withholding of her security deposit (K.S.A. 58-2550[c]); and (3) denial of damages for the landlord's alleged breach of a statutory duty to provide habitable

housing (K.S.A. 58-2553). We affirm on the first issue, reverse with instructions to award the full amount of statutory damages on the second issue, and reverse and remand for further proceedings on the third issue.

Sharon Love entered into a written lease agreement with Monarch Apartments and paid a $150 security deposit for apartment # 4 at 441 Winfield in Topeka, Kansas. Shortly after moving in, she experienced a serious problem with termites. Her walls swelled, clods of dirt came out, and, when she checked on her children one night, she saw termites flying around their room. She complained to Monarch's manager and its managing general partner; she consulted an attorney, who also contacted Monarch's manager and its general partner. After these complaints, Monarch arranged for an exterminator. While the apartment was being treated, Sharon Love stayed at a local motel at Monarch's expense and then stayed with her sister.

Upon moving back to the apartment, she again had problems with termites. She complained, and Monarch arranged for her to move into apartment # 2, which had been recently rehabilitated.

Before she moved into apartment # 2 in April, she noticed roaches. She asked Monarch's manager to have the apartment sprayed, but no spraying was done. Upon moving in, she noticed that roaches crawled over the walls and ceiling, and the floors where one of her little girls was also trying to crawl. She complained, and Monarch called an exterminator, who sprayed the apartment. When the roach problem persisted into May, the exterminator returned and "bombed" the apartment. When the roaches still persisted, plaintiff bought and used a spray from a hardware store. As a result of inhaling fumes from all these sprayings, plaintiff and her two little girls became sick and were treated at a local hospital.

When Sharon Love complained, Monarch offered to let her move back into her old apartment. Instead, Love called the "Section 8" housing representative of Topeka Housing Authority and obtained permission to move to a different complex.

About the time she moved out of the Monarch Apartments, Love requested the return of her security deposit. Monarch sent her a letter stating that it would be returning only $97 of her $150 deposit. Of the remaining $53, $40 would be retained for the cost of shampooing her carpet and $13 for "general clean-up." Within

two weeks of the first letter, Monarch sent a second letter stating that it would not be returning any of her security deposit because she had terminated her lease prior to its expiration date.

### Full Refund of Security Deposit

The district court granted judgment for Sharon Love in the amount of $110, representing the amount of her security deposit less $40 for Monarch's cost of shampooing the carpet. Sharon Love argues on appeal that the court erred in allowing Monarch to withhold the $40.

A tenant is responsible for any damage he or she causes to the premises. K.S.A. 58-2555(f). If a tenant causes damage, the landlord may apply the tenant's security deposit to the amount of damages suffered by giving the tenant an itemized, written notice upon the termination of the tenancy. K.S.A. 58-2550(b); *Vogel v. Haynes*, 11 Kan. App. 2d 454, Syl. ¶ 1, 730 P.2d 1096, *rev. denied* 240 Kan. 806 (1986).

Love argues that the damage to her carpet was caused by normal wear and tear and points out that, under the lease, the "[t]enant is not liable for the repairs of damages caused by normal wear and tear." Although the trial court did not expressly find that the damage to the carpet was more than caused by normal wear and tear, this finding was implicitly made when the trial court allowed Monarch to withhold $40 of the security deposit. See *Celco, Inc., of America v. Davis Van Lines, Inc.*, 226 Kan. 366, Syl. ¶ 2, 598 P.2d 188 (1979), and *Bruce v. Smith*, 204 Kan. 473, Syl. ¶ 1, 464 P.2d 224 (1970) (a trial court is presumed to have found all facts necessary to support its judgment).

On appeal, the question becomes whether the trial court's finding is supported by substantial competent evidence. Greg Toelkes, the director of operations for Monarch's general contractor, testified that the apartment was "virtually brand new" before Sharon Love moved in, that the carpet had visible stains after she moved out, and that, in his opinion, the damage was more than normal wear and tear. Under these circumstances, we conclude that the trial court did not err in allowing Monarch to withhold $40 from Sharon Love's security deposit for the cost of shampooing the carpet.

Monarch argues that the trial court erred in allowing Love even a partial refund of her security deposit because Love terminated her lease prematurely. Because Monarch did not

cross-appeal, this issue is not properly before us. *Barkley v. Toland,* 7 Kan. App. 2d 625, 627, 646 P.2d 1124, *rev. denied* 231 Kan. 799 (1982).

## Damages for Wrongful Withholding of Security Deposit

Monarch withheld Sharon Love's entire security deposit. The trial court correctly ordered a refund of $110 from the security deposit held by Monarch. Monarch did not show that the $13 it withheld for general cleanup was for anything other than normal wear and tear, for which Sharon Love was not responsible under the lease. And, because the rental agreement did not contain a forfeiture provision, Monarch was not entitled to withhold anything for Sharon Love's premature termination of her lease. *Clark v. Walker,* 225 Kan. 359, 367, 590 P.2d 1043 (1979).

K.S.A. 58-2550(c) provides that, if the landlord fails to comply with subsection (b) relating to the return of a security deposit, the tenant may recover that portion of the security deposit due together with damages in an amount equal to one and one-half the amount wrongfully withheld. The trial court, however, denied statutory damages, holding that they were discretionary with the court. We disagree.

K.S.A. 58-2550(c) is based on § 2.101(c) of the Uniform Residential Landlord and Tenant Act, 7B U.L.A. 453 (1985). In construing the precise section we are now considering, the Oregon Court of Appeals held that the trial court had no discretion to reduce statutory damages:

"The statute is unambiguous and absolute. The use of 'the tenant *may* recover' rather than 'the tenant *shall* recover' does not give the *court* any discretion. Rather, it is a statement of the steps the *tenant,* as a matter of right, may take if the landlord does not comply with the statute. If the tenant decides to sue and is successful, the recovery will be the full penalty; that is, if the facts are shown, the tenant is entitled to judgment. The amount does not depend on the landlord's good faith or bad faith or on the tenant's damages or lack of damages. The obvious purpose of the statute is to encourage landlords to fulfill their statutory duties by establishing an automatic penalty for their failure to do so. Discretion to reduce the award would subvert the statutory purpose." *Beckett v. Olson,* 75 Or. App. 610, 613-14. 707 P.2d 635 (1985).

We agree with the above analysis and hold that the trial court erred in failing to award Sharon Love an amount equal to one and one-half times $110. K.S.A. 58-2550(c).

## Damages for Breach of Statutory Duty to
## Provide Habitable Housing (K.S.A. 58-2553)

The trial court did not decide whether Monarch had actually breached any statutory duty to provide habitable housing. It did hold that Sharon Love could not recover damages (1) because she failed to give Monarch written notice of any alleged breach; (2) because Monarch had made a good faith effort to remedy the situation; and (3) because plaintiff had not established any awardable damages as a result of Monarch's alleged breach.

K.S.A. 58-2559 sets forth the rights of the tenant when the landlord does not comply with either the rental agreement or the statutory duties set forth in K.S.A. 58-2553. K.S.A. 58-2559(a) permits a tenant to terminate the lease for material noncompliance if the tenant gives written notice of the breach to the landlord and the landlord fails to initiate a timely, good faith effort to remedy the breach. K.S.A. 58-2559(b) permits a tenant to recover damages for any noncompliance with either the lease or K.S.A. 58-2553. Unlike K.S.A. 58-2559(a), 58-2559(b) does not require the tenant to give notice and its availability is not dependent upon the landlord's lack of good faith. See *L & M Investment Co. v. Morrison*, 286 Or. 397, 408-09, 594 P.2d 1238 (1979).

The trial court erred in holding that Love had suffered "inconvenience only and did not suffer any provable damages." A residential lease "is essentially a contract containing reciprocal rights and obligations on the part of lessor and lessee." *Steele v. Latimer*, 214 Kan. 329, Syl. ¶ 6, 521 P.2d 304 (1974). These rights and obligations include the duties imposed on a landlord by the Kansas Residential Landlord and Tenant Act. 214 Kan. 329, Syl. ¶ 7; K.S.A. 58-2553. If Monarch has failed to comply with its statutory duties under K.S.A. 58-2553, it has breached its contract with Love, and Love is entitled to the traditional remedies for breach of contract, including recovery of damages. 214 Kan. at 336.

The primary measure of damages, in our opinion, is the difference between the fair rental value of Love's apartment as it should have been and the fair rental value of the apartment as it actually was, insofar as the difference resulted from Monarch's breach of its statutory duties. Love is also entitled to any consequential damages flowing from Monarch's breach if such

damages "may fairly be considered as arising, in the usual course of things, from the breach itself," or "may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach." *Kansas State Bank v. Overseas Motosport, Inc.*, 222 Kan. 26, 27, 563 P.2d 414 (1977) (following *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145, 5 Eng. Rul. Cas. 502 [1854]). Assuming there was a breach, it is obvious to us that Love has suffered some damage. Accordingly, we reverse and remand for a determination of whether Monarch breached its statutory duties under K.S.A. 58-2553 and, if so, the amount of damages Love suffered as a result.

Affirmed in part, reversed in part, and remanded.