# CIRCUIT COURT OF THE CITY OF NORFOLK

Arthur L. Guy, Jr.

v.

Tidewater Investment
Properties et al.

December 20, 1996

Case No. (Law) L-95-1194

BY JUDGE CHARLES E. POSTON

This case, which involves a tenant's suit against her landlord for the lead poisoning of her infant child, comes before the court on defendant's demurrer to the motion for judgment. A demurrer tests the sufficiency of the factual allegations contained in a motion for judgment to determine whether a cause of action has been stated. *Fun v. Virginia Military Institute*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993) (citing *Elliot v. Shore Stop, Inc.*, 238 Va. 237, 239-40, 384 S.E.2d 752, 753 (1989)). To withstand a demurrer, a complaint need only inform the defendant of the nature of the demand made upon him and state suc the public. In May 1991, Martha O. Guy and

her husband leased an apartment in the Ocean Air Apartments, specifically at 454A Chester Street, Norfolk. The plaintiff and her family, including her infant son, resided in the apartment from May 1991 until October 1992.

Before the execution of the May 1991 lease agreement, the defendants had received written notices on several occasions from the City of Norfolk, Department of Public Health, Bureau of Environmental Health Services, regarding various apartment units in the Ocean Air Apartments. These notices stated that paint containing high levels of lead had been detected in various specified apartment units, that high levels of lead constitute a health hazard to children and adults, and that this hazardous lead material was required to be removed or encapsulated. The plaintiff was not informed of these notices before the execution of the May 1991 lease agreement.

On May 20, 1992, the Norfolk Department of Public Health inspected the interior and exterior of the plaintiff's apartment, as well as the common areas surrounding the unit. This inspection revealed the presence of high levels of lead in these areas. The Department of Health sent a letter to Tidewater Investment Properties dated July 9, 1992, advising that the department's "investigation at the above subject premises indicates high levels of lead-based paint." The Department of Health notice required the abatement of the hazardous lead material and granted Tidewater Investment Properties ten days to remove or cover the lead paint in the areas indicated on an attachment to the notice. The areas identified were: the front screen door; the overhead front porch soffit; the front porch columns; the front door jambs; the front closet door frames; and the back door jambs. The Department of Health subsequently granted Tidewater Investment Properties additional time to remove or cover the lead paint in the areas identified.

In October 1992, the plaintiff vacated the apartment. Thereafter, on December 4, 1992, the Norfolk Health Department reinspected the exterior of the plaintiff's former apartment and found that some, but not all, of the lead paint in the areas previously identified had been removed or covered. Hazardous lead material continued to be present in the apartment unit. As late as June 3, 1993, no work on removal of the hazardous lead material had begun, and P. Hedrick of the Norfolk Health Department contacted Mr. Mitchell, the manager of the Ocean Air Apartments. In their ensuing conversation Mr. Mitchell informed Mr. Hedrick that "the owner told him 'not' to make the repairs." Even after later visits by Mr. Hedrick, the defendants failed to abate the lead-containing paint completely and properly. Furthermore, improper methods were utilized in the abatement work that was undertaken.

The plaintiff's infant son was diagnosed with lead poisoning on March 24, 1992. The plaintiff alleges that it was the presence of the hazardous lead material in the apartment which caused her infant son to suffer the severe and permanent lead-related injuries which he will be forced to endure the rest of his life. The plaintiff alleges that the defendant's conduct has resulted in the following damages: the expense of various sums of money to treat the resulting injuries; the suffering of physical and mental impairment; the severe impairment of his enjoyment of life; and the loss of future earnings and earning capacity. As a result, the plaintiff prays for judgment against the defendants for compensatory and punitive damages in the amount of $6,000,000, plus interest and costs.

### Count I: Fraudulent Concealment

Count I alleges that at the time of the execution of the lease, the defendant fraudulently concealed from the plaintiff the fact that the apartment unit likely contained hazardous lead paint. The defendant demurs, arguing that plaintiff has failed to allege facts which show that the defendants, at the time the lease was entered into, deliberately concealed from the plaintiff the material fact that the apartment contained hazardous levels of lead. The defendant claims that the facts alleged in the Motion for Judgment show that the presence of lead-containing paint on the exterior of the plaintiff's apartment was not discovered by the Norfolk Health Department until May 20, 1992, and the defendants were not notified of this fact until July 9, 1992, more than a year after plaintiff leased the premises and just three months before plaintiff vacated the premises. Thus, the defendants argue, they could not have deliberately concealed from the plaintiffs the presence of the hazardous lead material at the time the parties entered into the lease because they did not have knowledge of the fact at that time. Furthermore, the defendants contend that the plaintiff fails to allege facts showing that the defendant knew that plaintiff was acting on the assumption that the apartment did not contain lead and fails to allege facts demonstrating that the presence of lead-based paint was a material fact to the lease.

On demurrer a motion for judgment is deemed sufficient when it states the essential elements of the cause of action. *Lyons v. Grether*, 218 Va. 630, 633, 239 S.E.2d 103, 105 (1977). Count I alleges fraudulent concealment, a form of fraud. The elements of the cause of action of actual fraud are (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to him. *Van Deusen v. Snead*, 247 Va. 324, 327, 441 S.E.2d 207, 209 (1994); *Thompson v. Bacon*, 245 Va. 107, 111, 425 S.E.2d 512, 514 (1993).

A plaintiff may also allege constructive fraud which does not require proof of fraudulent intent. To establish constructive fraud, the plaintiff must show that (1) there was a material false representation, (2) the hearer believed it to be true, (3) it was meant to be acted on, (4) it was acted on, and (5) damage was sustained. *Nationwide Ins. Co. v. Patterson,* 229 Va. 627, 331 S.E.2d 490 (1985). The Virginia Supreme Court has continually emphasized that concealment of a material fact may constitute sufficient misrepresentation to maintain a fraud action. *Van Deusen,* 247 Va. at 327; *Spence v. Griffin,* 236 Va. 21, 28, 372 S.E.2d 595, 598-99 (1988); *Allen Realty Corp. v. Holbert,* 227 Va. 441, 450, 318 S.E.2d 592, 597 (1984); *see also Restatement (Second) of Contracts,* § 160 (1979) ("action intended or known to be likely to prevent another from learning a fact is equivalent to an assertion that the fact does not exist ... [concealment] is always equivalent to a misrepresentation").

The defendants' demurrer first attacks the misrepresentation element of the fraudulent concealment cause of action. The defendants argue that they could not have deliberately concealed the presence of the hazardous lead paint from the plaintiffs because the defendants did not have knowledge of the presence of the lead until July 9, 1992, over one year after the plaintiffs leased the premises. Defendant is correct that the Motion for Judgment alleges that the defendants were not informed by the Health Department of the lead paint in plaintiff's apartment until July 9, 1992, when a written notice was sent. However the plaintiff specifically alleges in his Motion for Judgment that "prior to the execution of the lease agreement, the defendants knew, should have known, or had reason to know that hazardous lead material was present on the interior portions of the apartment unit ... ." MJ ¶ 19. Since the purpose of a motion for judgment is only to inform the plaintiff of the claim being brought against him, *see Hortenstein,* 102 Va. 914, 925-26, the plaintiff's allegations regarding the misrepresentation element of fraudulent concealment are sufficient to withstand the demurrer.

The defendant next contends that the plaintiff has failed to plead sufficiently the element of fraudulent concealment requiring that the defendants willfully and deliberately concealed the material fact while knowing that plaintiff was acting on the assumption that the fact did not exist. The Motion for Judgment alleges that the defendants willfully and deliberately concealed the fact that the apartment contained lead paint. MJ ¶ 20. Furthermore, the plaintiff alleges that this concealment was done in order to induce the plaintiff to rent the apartment. MJ ¶ 21. These allegations taken together clearly, at least impliedly, allege that the defendant was acting on the assumption that the plaintiff did not know of the presence of the lead paint. These implications of the plaintiff's allegations may be considered since a

demurrer admits the truth of not only those facts expressly alleged but also those facts which, by fair intendment, impliedly alleged and which may be fairly and justly inferred from the facts alleged. *See Bowman v. State Bank,* 229 Va. 534, 536, 331 S.E.2d 797, 798 (1985). Under the facts alleged by plaintiff the concealment could only serve to induce the plaintiff, to rent the apartment if the plaintiff were unaware of the hazard. Thus in alleging the willful concealment in order to induce the rental, the plaintiff has sufficiently alleged this element of fraudulent concealment.

As to the third ground of the demurrer to Count I, the plaintiff has failed to plead sufficiently the materiality of the fact that the apartment contained lead paint. A fact is material when it influences a person to enter into a contract, when it deceives him and induces him to act, or when, without it, the transaction would not have occurred. *Packard Norfolk, Inc. v. Miller,* 198 Va. 557, 95 S.E.2d 207 (1956). Neither the motion for judgment nor the bill of particulars contain any allegations that the presence or non-presence of lead paint had an influence on the plaintiff's entering into the contract nor that the disclosure of the presence of the lead paint would have prevented the execution of this lease. Because the materiality of the fact is an essential element of the fraudulent concealment cause of action, the plaintiff was required to allege this element in his Motion for Judgment. *See Lyons,* 218 Va. at 633. Thus the Motion for Judgment is deficient as to this count.

The demurrer as to Count I is sustained with leave to amend.

### *Count II: Violation of Norfolk Code § 27-36*

Count II alleges that the defendants breached their duty to abate the lead hazard and/or negligently abated the lead hazard, in violation of Norfolk City Code § 27-36. Defendant argues that the plaintiff fails to allege any facts indicating that the Department of Public Health found a violation of Norfolk Code § 27-36 and that if the Health Department had found a violation, it would have charged Tidewater Investment Properties under § 27-32.

Norfolk Code § 27-36 charges the Director of Public Health with issuing a notice to the owner or occupant of a premises to remove, abate, or remedy the presence of lead paint when the Director determines that it creates a health hazard. The section gives the Director discretion as to the length of time for removal or abatement of the lead paint and as to the granting of additional periods of time to remove the hazard. The plaintiff alleges that the Norfolk Health Department gave the defendant notice of the presence of lead in the Ocean Air Apartments on July 9, 1992, that the notice required the abatement of the lead paint within sixty days, that the Health Department re-inspected the apartment units on or about December 4, 1992, and that these inspections

revealed that the lead paint had not been properly and completely removed or encapsulated.

While the defendant is correct in contending that the Health Department never charged the defendants with a violation of § 27-36, the motion for judgment nonetheless sufficiently alleges a violation of § 27-36. Although § 27-36 grants the Director of Health discretion in setting the time deadlines for removal of hazardous material, the facts alleged by plaintiff establish that neither the original deadline of sixty days nor a subsequent five-day extension granted by the Health Department on June 3, 1993, was met by the defendants. Even though the Health Department was exercising discretion in not charging the defendants with a violation of the ordinance, the bill of particulars sets out several comments made by Mr. Hedrick of the Health Department indicating that the department considered the defendants to be in violation of § 27-36. The plaintiff alleges that on June 3, 1993, Hedrick informed the defendants that because they had not even started to do the abatement at the conclusion of the sixty day period, the Health Department would "meet them in court." BP, at 6. The plaintiff also alleges that on October 21, 1993, Hedrick stated that he told the defendants to follow the instructions of the Health Department or "I would tell Existing Structures to proceed with court." Both these comments indicate that the Health Department considered the defendants to be in violation of the ordinance. The fact that the department was pursuing remedies less drastic than charging a violation does not affect the fact that the plaintiff has alleged sufficient facts from which it can be inferred that the defendants were in violation of § 27-36.

The defendant also demurs to Count II on the ground that Norfolk City Code § 27-36 does not give rise to a civil cause of action. In response, the plaintiff cites Virginia Code § 8.01-221. This section provides:

> Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation even though a penalty or forfeiture for such violation be thereby imposed, unless such penalty or forfeiture be expressly mentioned to be in lieu of such damages … .

Virginia Code § 8.01-221 (Michie's 1995).

The plaintiff primarily relies on circuit court opinions interpreting § 8.01-221 to argue that this section provides that the violation of any statute or ordinance gives rise to a private cause of action. For instance, in *Mabry v. Beckstoffer*, 9 Va. Cir. 244 (1987), the Circuit Court of the City of Richmond relied on § 8.01-221 in allowing the plaintiff to maintain a cause of action on the basis of violations of local ordinances prohibiting the use of lead paints and

of maintaining a premises in which lead paint was chipped, blistered, peeling, or cracked. In *Hicks v. Myers,* 2 Va. Cir. 122 (1983), the Richmond court further indicated its broad interpretation of § 8.01-221 when it stated "certainly this section is a recognition by the General Assembly of Virginia of a public policy to allow the recovery of damages without restriction for the violation of a statute." *Hicks,* 2 Va. Cir. at 123; *accord, Thurman v. Falk,* 6 Va. Cir. 263 (Circuit Court of Petersburg stating that § 8.01-221 provides that any person injured by the violation of any statute may recover of the offender such damage as he may sustain by reason of the violation); see also, *Johnson v. Harris,* No. L96-380, unpublished order (September 25, 1996) (Circuit Court of Portsmouth overruling, without discussion, demurrer to count alleging the defendant's failure to abate and/or negligent abatement of a lead hazard as required by Portsmouth Code provision).

The Virginia Supreme Court has taken a much more limited view of the effect of § 8.01-221. In *Vansant and Gusler, Inc. v. Washington,* 245 Va. 356, 429 S.E.2d 31 (1993), the Court explained that § 8.01-221 does not create a new right of action for violation of some other criminal or penal statute where no civil right of action independently exists. See also, *Oliver v. Kashin,* 192 Va. 540 (1951) ("neither these ordinances nor section 8-652 [now 8.01-221] … enlarged the common law duty of the defendants to their tenant or her invitee"); *Mapstone v. McLaughlin,* 6 Va. Cir. 128 (1984) ("it cannot be supposed that in enacting [this section] the legislature had the remotest idea of creating any new ground for bringing an action for damages") (citing *Tyler v. Western Union Telegraph Co.,* 54 F. 634 (C.C. Va. 1893)). Instead, a civil right of action exists only if another statute by its terms so provides or if proof of the same facts that establish violation of such other statute also constitutes proof of an otherwise existing civil action independent of the criminal or penal statute. *Vansant,* 245 Va. at 361, 429 S.E.2d at 34. The *Vansant* court applied this reasoning to hold that § 8.01-221 did not give rise to a private right of action for damages stemming from an alleged violation of Virginia Code § 43-13 which criminalizes a type of construction fraud. *Vansant,* 245 Va. at 360, 429 S.E.2d at 33. The *Vansant* court explained the purpose of § 8.01-221 as:

> [M]erely to preserve to any injured person the right to maintain his action for the injury he may have sustained by reason of the wrong-doing of another, and to prevent the wrong-doer from setting up the defense that he had paid the penalty of his wrongdoing under a penal statute. It cannot be supposed that, in enacting section [8.01-221], the Legislature had the remotest idea of creating any new

> ground for bringing an action for damages. *Connelly v. Western Union Tel. Co.,* 100 Va. 51, 62-63, 40 S.E. 618, 622 (1902) (quoting *Tyler v. Western Union Tel. Co.,* 54 F. 634, 637 (1893)).

*Vansant,* 245 Va. at 360, 429 S.E.2d at 33.

The Virginia Supreme Court has consistently followed the *Connelly* interpretation of § 8.01-221. In addition, the *Vansant* court explains that the General Assembly has presumably sanctioned this interpretation as well by repeatedly reenacting § 8.01-221 in the many sessions of the legislature since the 1902 *Connelly* decision. 245 Va. at 361, 429 S.E.2d at 33. Moreover, the *Vansant* court asserted that the General Assembly has implicitly acknowledged the *Connelly* interpretation by expressly providing, in certain instances, for civil actions based on the violation of criminal and other statutes. *See also,* Code §§ 18.2-499 and 18.2-500 (civil action for damages authorized for violation of statute making it a crime to conspire to injure other persons in their trade or business); Code § 59.1-9.12 (private action based on violation of Virginia Antitrust Act); Code § 59.1-68.3 (private action for damages authorized for violation of Virginia Home Solicitations Sales Act); and Code § 59.1-21.12 (private action authorized for violation of Virginia Petroleum Products Franchise Act).

The defendant also cites the Virginia Supreme Court decision in *Klingbeil Management Group Co. v. Vito* for his interpretation of § 8.01-221. The court in *Klingbeil,* while basing its decision on the fact that the local ordinance had been superseded by state law, did suggest that liability would lie for the violation of a local dead-bolt ordinance absent the state preemption. *Klingbeil Management Group Co. v. Vito,* 233 Va. 445, 450, 357 S.E.2d 200, 203 (1987). However, the plaintiff's claim in *Klingbeil* was based on the independent cause of action of negligence, and nowhere in the decision did the court suggest that violation of the ordinance could give rise to a cause of action separate and apart from negligence. Analyzed in this light, the *Klingbeil* decision is consistent with the idea that while § 8.01-221 does not serve to create causes of action out of statutory violations, such violations can be relevant to a plaintiff's cause of action by providing the basis for a showing of negligence *per se* or a breach of the applicable standard of care. Indeed, Virginia courts have consistently held that a violation of a building code or any other statute enacted to protect health, safety, or welfare is negligence *per se. MacCoy v. Colony House Bldrs.,* 239 Va. 64, 387 S.E.2d 760 (1990); *VEPCO v. Savoy Constr. Co.,* 224 Va. 36, 294 S.E.2d 811 (1982). As these decisions require the existence of an independent private action such as negligence in order for the violation of the statute to serve as the basis of liability, they are

consistent with *Connelly's* interpretation of § 8.01-221. *See, MacCoy,* 239 Va. 64, 387 S.E.2d 760 (1990) (agreeing that a violation of a building code is negligence *per se*); *VEPCO,* 224 Va. 36, 294 S.E.2d 811 (stating that because defendant was in violation of the building code and the plaintiff was within the class of persons the building code was designed to protect and that explosions and fires were dangers it was designed to prevent, defendant's violation of the code constituted negligence *per se*); *see also, Wyatt v. Chesapeake & Potomac Telephone Co.,* 158 Va. 470, 163 S.E. 370 (1932); *Standard Red Cedar Chest Co. v. Monroe,* 125 Va. 442, 99 S.E. 589 (1919); *Richmond & Danville Railroad Co. v. Noell,* 86 Va. 19, 9 S.E. 473 (1889).

Because the plaintiff's claim in Count II fails to state a cause of action for a violation of Norfolk Code § 27-36, the demurrer is sustained without leave to amend.

### *Counts III, IV, and VII: Virginia Residential Landlord/Tenant Act*

Counts III, IV, and VII allege various violations of the Virginia Residential Landlord Tenant Act. The defendant demurs to these counts, alleging that the motion for judgment fails to allege facts showing any violations of the act. Specifically, the defendant contends that these counts are deficient in that they fail to allege facts showing the apartment unit was not habitable and fail to allege facts showing a breach of the duty to keep all common areas in a clean and structurally safe condition. In addition, the defendant maintains that the VRLTA does not create a cause of action but provides specific remedies to plaintiffs where a landlord fails to comply. Because the plaintiff in the present case failed to adhere to the statutory notice procedures required by the VRLTA remedy provisions, the defendant claims a cause of action based on VRLTA has not been stated.

Count III alleges that the defendants breached their duty under Va. Code § 55-248.13(a)(1) to comply with the requirements of building and housing codes materially affecting health and safety. The plaintiff has sufficiently alleged a violation of § 55-248.13(a)(1) (compliance with applicable building and housing codes). The defendants' argument in relation to this provision is the same as that made in Count II, that no violation of Norfolk Code § 27-36 has been alleged. However, for the reasons stated regarding Count II, the plaintiff has sufficiently alleged a violation of § 27-36.

In Count IV plaintiff alleges a violation of the duty pursuant to § 55-248.13(a)(2) to make all repairs and do whatever is necessary to put and keep the apartment unit in a fit and habitable condition. The plaintiff has also sufficiently alleged a violation of § 55-248.13(a)(2) (duty to make all repairs and do what is necessary to put and keep the premises in a fit and habitable

condition). Commentators have explained that this section is violated by defects or unsafe conditions of such a nature and kind that they render the premises unsafe or unsanitary and thus unfit for living therein. *See* Friedlander, *Landlord-Tenant Law* § 7-13D(2) at 164 (1992). The cases indicate that whether a defect will result in liability must be determined on a case by case basis. Clearly, in the present case, the plaintiff has alleged enough evidence of unfitness of the dwelling to withstand a demurrer. The Motion for Judgment alleges that the apartment in which the plaintiff and her infant son were living contained deteriorating lead paint both in the apartment and in the common areas and that lead paint is a hazardous substance. MJ at 8. These facts can support a conclusion that the premises were unsafe and/or not habitable.

In Count VII the plaintiff has sufficiently alleged a violation of § 55-248.13(a)(3) (duty to keep all common areas in a safe condition). Contrary to the defendants' assertions, the plaintiff has alleged facts supporting the conclusion that the common areas were unsafe. Plaintiff alleged in his bill of particulars that there was deteriorating paint in the common areas that posed an immediate health hazard to plaintiff's infant child. BP at 11-12.

The defendants maintain that the plaintiffs never gave the defendants written notice of a breach of the rental agreement or the act as required by the remedies authorized by the VRLTA. However, the plaintiff was not required to provide such notice in order to bring this action. The Act sets out certain situations when the tenant may provide notice in order to pursue certain remedies, but the tenant need not deliver a notice to cure or terminate in order to sue for damages. This is the conclusion reached by several other state courts under their version of the Uniform Landlord Tenant Act upon which the VRLTA is based. *See L & M Inv. Co. v. Morrison,* 286 Or. 397, 594 P.2d 1238 (1979), *on remand,* 44 Or. App. 309, 605 P.2d 1347 (1980); *K. D. Lewis Enters. v. Smith,* 445 So. 2d 1032 (Fla. App. 5th Dist. 1984); *Love v. Monarch Apts.,* 13 Kan. App. 2d 341, 771 P.2d 79 (1989). As the *Love* court explained: "The tenant's actions to recover damages for a landlord's alleged breach of statutory duty to provide habitable housing is essentially an action for breach of contract and does not, therefore, depend upon tenant giving notice to landlord ... ." *Love,* 13 Kan. App. 341. Thus the plaintiff can maintain this action for damages despite the failure to follow the statutory notice procedures.

As to whether the VRLTA can give rise to a private cause of action, Virginia law seems clear. Section 55-248.40 of the VRLTA itself provides:

Any person adversely affected by an act or omission prohibited under this chapter may institute an action for injunction and damages against the person responsible for such act or omission in the circuit court in

the county or city in which such act or omission occurred. If the court finds that the defendant was responsible for such act or omission, it shall enjoin the defendant from continuance of such practice, and in its discretion award the plaintiff damages as herein provided.

Va. Code § 55-248.40 (Michie's 1995).

Also, in *Hicks v. Myers*, 2 Va. Cir. 122 (1983), the Circuit Court of the City of Richmond expressly held that a violation of the Act gave rise to a private cause of action for personal injury and resulting damages. The *Hicks* court noted that the Virginia Act was a version of the Uniform Residential Landlord and Tenant Act (URLTA) that a number of states have passed. Thus the court looked to whether other states had interpreted the act as creating a private cause of action. The *Hicks* court began by noting that in all states adopting the URLTA, including Virginia, damages of some sort were allowed for violations of the act. As to personal injury damages, however, the court found that only the Oregon Supreme Court had specifically addressed this issue. The Oregon court concluded that damages under the URLTA would include personal injury damages. In interpreting Virginia's version of the law, the *Hicks* court concluded that although the Virginia Supreme Court had not ruled on the issue, "a fair reading of Virginia Code §§ 55-248.13, 55-248.21, and other applicable sections of the Virginia Residential Landlord and Tenant Act," supported the conclusion that "a viable cause of action, including personal injuries and resulting damages, will flow from noncompliance with that law." The *Hicks* court also read the Virginia Act in conjunction with Virginia Code § 8.01-221. As a result, the *Hicks* court followed the lead of the Oregon court and allowed the recovery of damages for personal injury by virtue of a violation of the Virginia Residential Landlord and Tenant Act. Because the reasoning of *Hicks* is consistent with the decisions of other state courts interpreting their versions of the VRLTA,[1] the court finds that the Virginia act does give rise to a private cause of action.

The defendants' demurrer as to Counts III, IV, and VII is overruled.

---

[1] In addition to the Oregon decision, see, e.g. *Watson v. Sellers*, 299 S.C. 426, 385 S.E.2d 369 (1989); *Helton v. Reynolds*, 640 S.W.2d 5 (Tenn. App. 1982); *Flood v. Wisconsin Real Estate Inv. Trust*, 503 F. Supp. 1157 (D.C. Kan. 1980); *New Hampshire Ins. Co. v. Hewins*, 6 Kan. App. 2d 259, 627 P.2d 1159 (1981). *See also* Friedlander, § 9-8 at 64 (Supp. 1995) (stating that "[u]nder the Virginia Residential Landlord & Tenant Act, civil remedies are clearly spelled out throughout the enactment as well as the generic provision in § 55-248.40: "Any person adversely affected by an act or omission prohibited under this chapter may institute an action for injunction and damages against the person responsible for such act or omission ... .").

### *Count V: Implied Warranty of Habitability*

Count V alleges that the defendants breached their implied warranty of habitability because the apartment was not in a fit and habitable condition due to the high levels of lead present on the interior and exterior walls of the apartment. In response, the defendants allege that this count must be dismissed because there is no implied warranty of habitability under Virginia law.

The defendants are correct in asserting that under Virginia common law, in the absence of an express undertaking to the contrary, the landlord gave the tenant no implied warranty that the demised premises were suitable for their intended purpose or that the landlord would repair or maintain the premises. *See Caudill v. Gibson Fuel Co.,* 185 Va. 233 (1946); *Powell v. John E. Hughes Orphanage,* 148 Va. 331, 353-54 (1927). The Virginia courts traditionally have refused to imply any warranty of habitability and have found that tenants assumed the risk of latent defects in the premises after taking possession. However, the VRLTA departed from the settled common law principles to impose on the landlord an affirmative duty to repair and maintain the premises in a fit and habitable condition throughout the term of the lease. *See* Va. Code § 248.13(a)(1-3); *see also* Friedlander, § 7-13(D)(1) at 163 (Va. Code § 55-248.13 is the landlord's warranty of habitability); *Landlord Tenant Law and Practice in Virginia,* § 1.203 at 8 (3d ed.) (§ 55-248.13 is "perhaps the single most important provision in the VRLTA" as it "departs from the settled common law principles and imposes on the landlord an affirmative duty to repair and maintain the demised premises in a fit and habitable condition ....."). Thus a warranty of habitability exists under the VRLTA.

The defendants' demurrer as to this count is overruled. However, the court notes that the plaintiff has already alleged causes of action based on violations of the same provisions of this same section in Counts III (§ 248.13(a)(1)), IV (§ 248.13(a)(2)), and VII (§ 248.13(a)(3)). Thus the action the plaintiff brings in Count V is simply duplicative of the allegations of violations of the VRLTA stated in Counts III, IV, and VII.

### *Count VIII: Virginia Consumer Protection Act*

Count VIII alleges a violation of the Virginia Consumer Protection Act in that the defendants used deception, fraudulent misrepresentation, and/or omissions which misled the plaintiff to believe that the apartment was fit and habitable, that the apartment was in full compliance with housing and health codes, and that the apartment was free of any health hazards. The defendant argues that Count VIII is deficient because it fails to allege the facts necessary

to establish a violation of the Virginia Consumer Protection Act. Specifically, the defendant states that the Motion for Judgment fails to allege facts showing misrepresentations by the defendants regarding repairs, alterations, modifications, services performed, or parts installed, and fails to allege facts demonstrating any fraudulent misrepresentation in connection with leasing the apartment to the plaintiff in May 1991.

The Virginia Consumer Protection Act states that it does not apply to "[a]ny aspect of a consumer transaction which is subject to ... the Virginia Residential Landlord and Tenant Act, Chapter 13.2 (§ 55-248.2, *et seq.*) of Title 55, unless the act or practice of a landlord is a misrepresentation or fraudulent act or practice under § 59.1-200." Va. Code § 59.1-199. The plaintiff relies on the exceptions contained in § 59.1-200(10) which refers to misrepresentations that "repairs, alterations, modifications, or services have been performed or parts installed," and § 59.1-200(14) which refers to "using any other deception, fraud, false pretense, false promise or misrepresentation in connection with a consumer transaction." The plaintiff contends that the defendants' fraudulent concealment and/or omissions regarding the lead paint hazards and the supposed repair of the hazard are equivalent to verbal misrepresentations of material facts relied upon by the plaintiff.

The Virginia Supreme Court has continually emphasized in the fraud context that concealment can be the equivalent of an express misrepresentation. *Van Deusen,* 247 Va. at 327; *Spence v. Griffin,* 236 Va. 21, 28, 372 S.E.2d 595, 598-99 (1988); *Allen Realty Corp. v. Holbert,* 227 Va. 441, 450, 318 S.E.2d 592, 597 (1984); *see also Restatement (Second) of Contracts,* § 160 (1979) ( "action intended or known to be likely to prevent another from learning a fact is equivalent to an assertion that the fact does not exist ... [concealment] is always equivalent to a misrepresentation"). Regarding concealment, the *Allen Realty* Court stated that "[c]oncealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." *Allen Realty,* 227 Va. 441, 318 S.E.2d 592 (1984). Thus concealment can satisfy the misrepresentation provisions of the Virginia Consumer Protection Act. In the motion for judgment, the plaintiff alleges that the defendants either misrepresented or concealed from the plaintiffs facts regarding repairs or services performed on the lead paint. MJ ¶ 37. Thus the plaintiff has sufficiently pleaded facts alleging a violation of § 59.1-200(10) of the Act.

While there is limited Virginia case law on the plaintiff's claim under § 59.1-200(14), several other states have adopted similar consumer protection acts and the conclusions reached by the courts in those states provide some guidance. Both Maryland and Massachusetts have passed similar legislation

which prohibits unfair, deceptive practices including misrepresentation. In cases dealing with similar facts to the present case, courts in Maryland and Massachusetts required that the defendant possess knowledge of the presence of the lead paint to be liable. *See, e.g. Hayes v. Hambruch,* 841 F. Supp. 706 (D. Md. 1994) (requiring landlord have knowledge of the presence of lead paint at the time of the execution of the lease in order to be held liable under the Maryland Consumer Protection Act); *Underwood v. Risman,* 605 N.E.2d 832 (Mass. 1993) (finding landlord not liable under statute prohibiting unfair or deceptive acts for failing to disclose presence of lead paint where the landlord had no actual knowledge of the lead paint when the premises were leased). In the present case the plaintiff alleges the defendant's knowledge of the lead paint hazard. MJ ¶ 7.

The demurrer is overruled as to Count VIII.